## OAKDALE MANUFACTURING COMPANY *et al. vs.* SEBASTIAN GARST.

In 1891 the parties to the suit other than the O. Manuf. Co., being separately engaged in the business of manufacturing and selling butterine and oleomargarine, united and formed a corporation for the purpose of carrying on their business together, in pursuance of an agreement to that end by the terms whereof each covenanted not to engage directly or indirectly in any business of the same kind for a period of five years from the date of the agreement. They became incorporated and organized as the O. Manuf. Co. under the laws of the state of Kentucky, and turned in the stock, machinery, accounts, and good will of their respective concerns, receiving therefor stock in the corporation, since which time the corporation has carried on the business. In August, 1892, the defendant sold out his stock in the company at a price greatly in excess of its actual value, and engaged in the same business. On a bill against the defendant for an injunction,

*Held*, that the contract was not void on grounds of public policy as a combination to create a monopoly.

*Held*, further, that it is not a violation of the laws or policy of Rhode Island for the citizens thereof to procure an act of incorporation in another state for the purpose of carrying on business as a corporation in Rhode Island.

*Held*, further, that the contract was not void as being in restraint of trade.

Contracts in restraint of trade are not necessarily void by reason of universality of time or of place ; but their validity depends upon the reasonableness of the restrictions under the conditions of each case. The test of reasonableness is the test of validity in contracts of this kind.

BILL IN EQUITY for an injunction to restrain the defendant from carrying on business in violation of the following agreement:

"And it is further mutually covenanted and agreed by and between the parties hereto, each for himself, however, and not for the others, that they will not engage, directly or indirectly, in any business of the same kind or for the same purpose or purposes, as that to be carried on by the corporation to be formed, nor will they, directly or indirectly, be concerned in, or be interested in, any firm, firms, corporation or corporations engaged in the same business or business similar to the business of the corporation to be formed for the period of five years from and after the date of this agreement."

The complainant, the Oakdale Manufacturing Company, is the corporation organized by the other parties to the suit, under the laws of the State of Kentucky, in pursuance of the agreement referred to in the opinion of the court.

*February* 27, 1894. STINESS, J. The complainants seek an injunction against the respondent, to restrain him from violating his covenant that he would not engage or be concerned in, directly or indirectly, the manufacture or sale of butterine or oleomargarine, for the space of five years from the date of the covenant. Prior to April 30, 1891, the parties carried on that business separately, when they agreed to unite and form a corporation for the purpose of carrying on their business together. To this end, all the parties turned in the stock, machinery, accounts and good will of their respective concerns, at a valuation greatly in excess of the value of the property itself ; taking an amount of stock

in the corporation represented by such valuation. The corporation has carried on the business since that time. In August, 1892, the defendant sold his stock in the company to present holders, for sixty thousand dollars, although, as he says, the property it represented was worth only about twenty-eight thousand dollars. After this he entered the same business again, and claims the right to do so upon the following grounds, viz.:

1.   That he was induced to enter into the contract through false and fraudulent misrepresentations of the complainants.

2.   That the contract is void as a combination to raise the price of a necessary and useful commodity in trade and to stifle competition.

3.   That one purpose of the contract was to form a corporation in violation of the laws of this State.

4.   That the contract being in restraint of trade, its enforcement is unreasonable.

As to the first defence, it is sufficient to say that we do not find it to be supported by the evidence. The respondent knew perfectly well what he was doing in making the arrangement, and agreed to it freely. The facts that one of the companies was using a secret process to preserve the freshness of the product, so that it could be exported to tropical climates, and that it was engaged to some extent in such export, are shown by the proof.

In support of the second ground of defence, the respondent cites cases of contracts to create a monopoly and to force prices. Such was *People* v. *North River Sugar Refinery Co.*, 54 Hun, 354; a proceeding to vacate the charter of the company because it had become a partner in the "Sugar Trust." The unlawfulness of such a combination was largely dwelt upon, but in the Court of Appeals, 121 N. Y. 582, the decision was sustained only upon the ground that the company had practically relinquished its corporate functions, and so had forfeited its franchise. *Arnot* v. *Pittston and Elmira Coal Co.*, 68 N. Y. 558; *Craft* v. *McConoughy*, 79 Ill. 346; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Pa. St. 173, and *Emery* v. *Ohio Candle Co.*, 47 Ohio St. 320, were cases

where contracts, based upon a monopoly, were held to be invalid. Undoubtedly there may be combinations so destructive of the right of the people to buy and sell and to pursue their business freely that they must be declared to be void upon the ground of public policy. In such cases the injury to the public is the controlling consideration. But it does not follow that every combination in trade, even though such combination may have the effect to diminish the number of competitors in business, is therefore illegal. Such a rule would produce greater public injury than that which it would seek to cure. It would be impracticable. It would forbid partnerships and sales by those engaged in a common business. It would cut off consolidations to secure the advantages of united capital and economy of administration. It would prevent all restrictions and exclusive privileges, and hamper the familiar conduct of commerce in many ways. There may be many such arrangements which will be beneficial to the parties and not injurious to the public. Monopolies are liable to be oppressive, and hence are deemed to be hostile to the public good. But combinations for mutual advantage which do not amount to a monopoly, but leave the field of competition open to others, are neither within the reason nor the operation of the rule. This is well put in *Skrainka* v. *Scharringhausen*, 8 Mo. App. 522, where twenty-four owners of stone quarries, on account of a ruinous competition which made it impossible to work their quarries at a profit, made an agreement to sell through a common agent for the space of six months, and the agreement was sustained. The court says: " But not every agreement in restraint of trade is illegal. Where the contract injures the parties making it, by diminishing their means for supporting their families, tends to deprive the public of the services of useful men, discourages the industry, diminishes the production, prevents competition, enhances prices, and being made by large companies or corporations, excludes rivalry and engrosses the markets,—tends to 'make a corner,' to use the slang of the stock and provision gamblers,—it is against the policy of the law. But restraints upon trade imposed by

agreement, under limitations as to locality, time and persons, are not necessarily restraints of trade in the general sense which is objectionable." So in *Tode* v. *Gross*, 127 N. Y. 480, the defendants had sold their business of making cheese by secret process, under a general restriction not to engage in the business for five years, with reference to which it is said: "The covenant was not in general restraint of trade, but was a reasonable measure of mutual protection to the parties, as it enabled the one to sell at the highest price and the other to get what they paid for. It imposed no restriction on either that was not beneficial to the other by enhancing the price to the seller or protecting the purchaser. Recent cases make it very clear that such an agreement is not opposed to public policy, even if the restriction was unlimited as to both time and territory. The restriction under consideration, however, was not unlimited as to time." These two cases state a very sensible rule, both as to the public and the parties, and they are exactly like the case before us. Here there is no monopoly. Three of the four companies in New England in this line of manufacture agreed to unite; one inducement being to stop the sharp competition then existing between them. But even so, not only is the field open to the other company, equal in strength to either of these, but it is also open to competition from companies in other parts of the country and to the formation of new companies. This is neither monopoly nor such an approach to it as amounts to the same thing. It is the common occurrence of a consolidation of firms. It is not illegal on the ground of reducing competition.

With reference to the third ground of defence, it does not appear that the agreement in any way violates the laws or policy of this State, and if it did, the defendant, being a party to it, could not set it up. *Chafee* v. *Sprague Manuf. Co.*, 14 R. I. 168. The mere fact that the complainant corporation is created under the laws of the State of Kentucky is not sufficient to warrant a dismissal of its case, for foreign corporations have frequently been recognized as suitors in this court. *Windham County Bank* v. *Kendall*, 7 R. I. 77;

*Howe Machine Co.* v. *York*, 11 R. I. 388; *Boston & Colorado Smelting Co.* v. *Smith*, 13 R. I. 27; *Singer Manuf. Co.* v. *King*, 14 R. I. 511. They are also recognized as doing business here by comity. *Peirce* v. *Crompton*, 13 R. I. 312. While the fact that citizens of Rhode Island go to Kentucky for an act of incorporation is one that naturally excites curiosity, if not suspicion, as to the motives and good faith of the concern, yet so long as it pursues a lawful business and violates no law of this State, we do not see how we can refuse to recognize it. True, the advantages of yearly statements and liability of stockholders given to creditors under our statutes are wanting; but that is a matter for those who deal with the corporation to consider. We can hardly deny the right of a foreign corporation to do business in this State, upon considerations of public policy, when our own statutes, Pub. Laws, cap. 1200, expressly provide for corporations formed in this State for carrying on business out of the State.

The fourth ground of defence involves the reasonableness of the restrictive covenant. The test of reasonableness is the test of validity in contracts of this kind. The test is to be applied according to the circumstances of the contract, and is not to be arbitrarily limited by boundaries of time and space. There has been much discussion upon this subject, which need not be repeated. The law has advanced, *pari passu*, with social progress to a point of practical unanimity. The rule, now generally received, has been recognized in this State, that contracts in restraint of trade are not necessarily void by reason of universality of time, *French* v. *Parker*, 16 R. I. 219, nor of space, *Herreshoff* v. *Boutineau*, 17 R. I. 3; but they depend upon the reasonableness of the restrictions under the conditions of each case. The diversity of these conditions produces an apparent diversity of decision, and yet it will be found upon examination that most of the cases really turn upon the reasonableness of the restriction. For example, in *Wiley* v. *Baumgardner*, 97 Ind. 66, cited by the respondent, sale was made of a dry goods store, with the vendor's agreement not to engage in the dry goods business for five years, and in *Herreshoff* v. *Boutineau* the agreement

was not to teach within this State. In these cases the subjects of the contracts were of a purely local character and outside restraint was unreasonable. On the other hand, in *Watertown Thermometer Co.* v. *Pool*, 51 Hun, 157, where the business was extensive, restraint within the entire territory of the United States, and in *Tode* v. *Gross*, 127 N. Y. 480, unlimited restraint as to territory, were sustained. The contract is to be determined by its subject matter and the conditions under which it was made; by considerations of extensiveness or localism, of protection to interests sold and paid for, of mere deprivation of public rights for private gain, of proper advantage on one side or useless oppression on the other. In this case the contracting parties were all capable business men. They knew what they were about. The clause objected to was mutually beneficial and equally restrictive. The respondent was to gain as much advantage from it as any of the others, so long as he remained in the company, and in case of sale it would enhance the value of his stock. And this it did; for when he sold his stock he received for it more than double what he testified the property was worth. Having received this large price for his stock, he now seeks to destroy its value upon the ground that the original agreement was unreasonable. The circumstances show that it was not unreasonable. The parties contemplated an extensive business, with a special effort to develop an export trade. No limitation of foreign countries could be made in advance, for the company was to seek its markets. In this country it might need to set branches in different parts for the sale or manufacture or exportation of its products. Time was needed to ascertain what could be done and where, and so the term of five years was agreed upon, within which the company should be free to seek its field of operation. To allow the respondent now to overthrow that agreement would be grossly inequitable. We think the complainants are entitled to the relief prayed for.

*Arnold Green, Richard B. Comstock & Rathbone Gardner,* for complainants.

*Simon S. Lapham,* for respondent.