NORTH SHORE DYE HOUSE, INC. *vs.* JACOB I. ROSENFIELD.

MAY 22, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This bill in equity was brought to enjoin the respondent from breaching his covenant not to engage in the dyeing, cleansing or laundry business within certain territory for a period of seven years. The cause is before us on the respondent's appeal from a decree of the Superior Court enjoining him from engaging in or working for others engaged in such business within the State of Rhode Island.

The bill alleges that the complainant is a Massachusetts corporation conducting a cleansing and dyeing business in the City of Revere, Massachusetts, from which it serves customers in various towns and cities of New England; that on or about January 9, 1931, complainant and respondent entered into a contract in writing by the terms of which respondent agreed that he would not engage directly or indirectly in the cleansing, dyeing or laundry business in any capacity and would not work for or assist any individual, firm or corporation, engaged in said business, for a period of seven years within the territory served by the complainant; that the agreement specified that it was understood and agreed that the territory served by the complainant comprised an area encompassed within the radius of two hundred miles from the main office of complainant at Revere, Massachusetts; that the respondent agreed that he would not disclose to any one the secrets, lists of customers, formulae or other information pertaining to the business of the complainant company; that before the filing of the bill, the respondent had become engaged in the cleansing and dyeing business conducted by Pequot Cleansers & Dyers,

Inc., in its plant located in the City of Providence; that the respondent had divulged and disclosed said secrets, formulae and other information pertaining to the business of the complainant and that such actions by the respondent were in violation of the agreement between complainant and respondent and would cause irreparable damage to the complainant.

The bill prayed that the respondent be restrained and enjoined for a period of seven years from January 9, 1931, within a radius of two hundred miles from the main office of complainant at Revere, Massachusetts, from engaging directly or indirectly in any manner whatsoever in the cleansing, dyeing or laundry business.

Respondent's answer admitted the making of the contract described in the bill of complaint and also admitted that the respondent at the time of the filing of the bill of complaint was employed by Pequot Cleansers & Dyers, Inc., in the City of Providence. The answer set up, however, that the contract relied upon by complainant was unenforceable in a court of equity because (1) said contract was without consideration; (2) the contract was entered into as a result of fraud and deceit and unjust and inequitable conduct on the part of certain officers of complainant; (3) that the contract was unreasonable in that the complainant's business interests did not require the exclusion of the respondent from the cleansing, dyeing and laundry business within a radius of two hundred miles from said Revere, Massachusetts; (4) that the contract was unreasonable and against public policy. The answer further denied that there were any secrets, formulae or other information which were the exclusive or secret property of the complainant.

In 1923 the respondent, who had had considerable experience in the cleansing and dyeing business, together with his brothers, Joseph and Samuel, organized the North Shore Dye House, Inc., and entered into the cleansing and dyeing business in Revere, Massachusetts. In 1929 re-

spondent, together with his brother Joseph, had acquired all the stock of the corporation. From 1923 to the 9th day of January, 1931, the respondent was the general manager, president and treasurer of the complainant corporation. The complainant conducted a wholesale cleansing and dyeing business at Revere, Massachusetts, and served customers in Massachusetts, Rhode Island and New Hampshire. Complainant's business extended northerly to Manchester, New Hampshire, and covered all points along the North Shore of Massachusetts. Complainant served customers in Worcester, New Bedford and Hyannis, Massachusetts, and in Woonsocket, Pawtucket, Providence, Warren and Bristol, Rhode Island. Complainant's business also included all communities between its main plant in Revere and the towns and cities named above. Complainant owned trucks and employed drivers who solicited customers over various routes. These drivers gathered articles of clothing for cleansing or dyeing, took them to complainant's plant at Revere and, after the cleansing or dyeing process had been performed, returned them to the various points where they had been collected. The customers solicited by complainant's drivers were mainly tailors and other persons engaged in the business of serving the retail trade in cleansing and dyeing.

In addition to their wholesale business, the respondent and Joseph owned an affiliated corporation, the Holland Cleansers & Dyers, Inc., which carried on a retail business and conducted stores in Manchester, Nashua and Concord, New Hampshire, and in Lawrence, Lowell, Haverhill, Fall River and New Bedford. The articles of clothing left at these stores for cleansing and dyeing were processed at complainant's main plant at Revere. Respondent and Joseph owned equally the capital stock in the complainant corporation and in Holland Cleansers & Dyers, Inc., from 1929 until January 9, 1931, at which time respondent sold his stock in the two corporations together with his interest in the assets to Joseph A. Rosenfield. Respondent received

from Joseph A. Rosenfield in payment therefor the sum of $45,000. On said date the respondent entered into two agreements. By the first agreement respondent agreed to sell his interest in the corporations to Joseph for the sum of $45,000 and agreed not to enter into the same line of business in any capacity for a period of seven years within the radius of two hundred miles from Revere.

By the other agreement of the same date, respondent agreed with complainant corporation and Joseph A. Rosenfield that respondent would not engage, directly or indirectly, in any manner whatsoever in the cleansing, dyeing or laundry business and would not work for any individual, firm or corporation engaged in said business for a period of seven years *within the territory served by the North Shore Dye House, Inc.*, which territory, the agreement stated, was understood and agreed to be that territory within the radius of two hundred miles from the main office of the company at Revere, Massachusetts. Respondent also agreed not to divulge any secret formulae or processes of the complainant.

After respondent sold his interest in the two corporations to his brother Joseph, the complainant corporation acquired all the stock of the Excel Cleansers & Dyers, Inc., which had its main plant at Auburn, Maine, conducted a general wholesale and retail cleansing business and operated retail stores at Bar Harbor, Augusta and Portland, Maine. The result is that the complainant and its affiliated companies conduct a wholesale cleansing and dyeing business from Bar Harbor, Maine, to Cape Cod, as far as Hyannis, including much of New Hampshire, Maine, Massachusetts and Rhode Island. The complainant's plant at Revere employs two hundred and twenty-five persons and the business has been increasing and branching out from year to year.

The respondent contended that he was employed only as a spotter and that he had no contact with the customers of the Pequot Company and had no authority to act for it in any capacity whatsoever except as a spotter. Respondent,

however, admitted that he was a general all-around man in the cleansing business and that had he desired there was certain confidential information he had acquired while with complainant which he could have imparted to the Pequot Company. He admitted further that he was the originator of the North Shore Dye House, Inc., and that the business of the North Shore Dye House, Inc., had been increasing from year to year.

The president of the Pequot Company admitted that on the day respondent entered the employ of said company it ordered a new shell dry-cleaning machine and that shortly thereafter the company secured several new accounts; that on March 14, 1932, the Pequot Company, which had been using gasoline to cleanse clothing, commenced to use a solvent, in place of gasoline, for cleansing purposes.

Joseph testified that of the $45,000 paid to respondent, $20,000 represented payment for respondent's share in the North Shore business and $25,000 represented compensation to respondent for the restrictive agreement. This testimony was denied by the respondent. There was some evidence tending to show that complainant had lost some business by reason of respondent's connection with the Pequot Company.

In his decision the trial justice said that the testimony disclosed that the complainant corporation, together with its affiliated companies, was serving territory extending from Augusta, Maine, down through Manchester, New Hampshire, Massachusetts, Rhode Island, bounded on the easterly side by Narragansett Bay to New Bedford and from New Bedford to Cape Cod. He stated that with a concern having that territory he could not say, as a matter of law or as a matter of fact, when he considered the natural expectation and hope for increase of complainant's business, that an area including the whole of the New England States was unreasonable. Said justice pointed out that respondent must have been familiar with this type of restrictive agreement in view of the fact that he had exacted similar agreements from his former associates who had left the complainant company while he was connected with it.

The final decree enjoined the respondent, for a period of seven years from January 9, 1931, from engaging directly or indirectly in any manner whatsoever in the cleansing, dyeing or laundry business within the State of Rhode Island. The decree further enjoined the respondent from acting, within the State of Rhode Island, directly or indirectly as agent or employee or assistant to the Pequot Cleansers & Dyers, Inc., and also enjoined the respondent from disclosing within this State any of the lists of customers, formulae or other information pertaining or relating to the business of the North Shore Dye House, Inc.

In the early English decisions it was held that all covenants in restraint of trade were void for illegality, but it was early recognized that a person in selling his established business, together with the good will, could make a valid agreement to refrain from destroying such good will by again entering into business in the same territory in competition with those to whom he sold. For the reason that damages to be suffered are irreparable and that an action at law would not afford adequate damages, equity grants relief, by injunction, to the purchaser.

The respondent makes no contention that the period of seven years is unreasonably long but does contend that a radius of two hundred miles from Revere, Massachusetts, comprises more territory than is reasonably necessary for complainant's protection.

In *Oakdale Mfg. Co.* v. *Garst*, 18 R. I. 484, this court held the agreement valid although the territory was unlimited in extent. The opinion contains language as follows: "The contract is to be determined by its subject matter and the conditions under which it was made; by considerations of extensiveness or localism, of protection to interests sold and paid for, of mere deprivation of public rights for private gain, of proper advantage on one side or useless oppression on the other. In this case the contracting parties were all capable business men. They knew what they were about. . . . The parties contemplated an

extensive business, with a special effort to develop an export trade. No limitation of foreign countries could be made in advance, for the company was to seek its markets. In this country it might need to set branches in different parts for the sale or manufacture or exportation of its products."

As we have above pointed out, the complainant does a wholesale and retail business. It is a large concern with subsidiaries and is continually extending its business into new territory. As was pointed out in the *Oakdale Mfg. Co.* case, the respondent could make a valid contract to protect the complainant from competition within so much territory as may be reasonably necessary for its expansion in the course of the seven-year period.

The trial justice found on the evidence that the whole of New England was not an unreasonable amount of territory. We have frequently held that such a finding will not, in the absence of other controlling circumstances, be disturbed on appeal.

It will be noted that, although said justice found that the whole of New England was not in the circumstances an unreasonable extent of territory, he enjoined the respondent only as to the territory of Rhode Island. It cannot be seriously contended that the territory as thus limited was unreasonable. When the respondent sold he had developed the business to a considerable extent in Rhode Island and thereafter the complainant continued to develop its business in this State.

It should be further noted that, although nearly all of New England is embraced within a radius of two hundred miles from Revere, a small portion of New Brunswick, a considerable portion of New York—including New York City—and a small portion of New Jersey is also included within said radius. Said justice made no finding as to whether said radius embraced more territory than was reasonably necessary for the complainant's protection.

The respondent relying upon *Herreshoff* v. *Boutineau*, 17 R. I. 3, contends that, if the agreement contains any

unreasonable provisions, the entire contract is void and the complainant is entitled to no protection. In that case the complainant in hiring the respondent as a teacher of languages for six months took from him an agreement not to teach within the State for one year after termination of his service. The court said: "The complainant bought nothing of the respondent whose value he now seeks to destroy. He hired the latter as a teacher at no more than fair wages. He needs and has the right only to be secured against injury to his school from teachers who may entice away his scholars after leaving his employ."

In many jurisdictions such agreements have been held to stand on a different basis from one where the respondent for an adequate consideration sells the good will of his business. In some cases the agreement has been held void or voidable for lack, or for inadequacy, of consideration. In § 1643 of his work on contracts, Williston says: "Courts are less disposed to sustain an agreement which forms part of a contract of employment to refrain from subsequently engaging in competitive occupation than where a similar agreement is attached to a contract of sale."

Said justice having found that the territory of New England was not unreasonable in extent, and, having made no finding as to the remainder of the territory within said radius, and having limited his decree to the territory of Rhode Island, it is evident that he was of the opinion that, even though the territory within said radius might be too expansive, the respondent's covenants were separable.

Are the covenants relied upon separable? In Williston on Contracts, § 1659, it is stated that: "The test is whether the restriction can be stated as separate and distinct covenants." In the case before us this can be done. The respondent agreed not to work for or assist any individual, firm or corporation engaged in such business, for a period of seven years *within the territory served by the said North Shore Dye House, Inc.*, and further agreed as follows: "said territory, it being understood and agreed, being all that

territory and area encompassed within the radius of two hundred miles from the main office of said company at Revere, Massachusetts."

Even if it should be held that said radius encompasses more territory than is reasonably necessary for the complainant's protection, the two covenants are separable and distinct; and the authorities are almost unanimous to the effect that in such a case a covenant to refrain for a reasonable time from competing within the territory served by the seller at the time of the sale is valid. In *Price* v. *Green*, 16 M. & W. 346, the respondent in selling his business covenanted not to engage in the trade within the cities of London or Westminster or within six hundred miles of either city. The court enforced the covenants as to London and Westminster and refused to enforce the covenant in respect to the area of six hundred miles. See also Williston on Contracts, § 1659. *Edgecomb* v. *Edmonston*, 257 Mass. 12 and cases cited.

In Williston on Contracts, § 1660, it is stated that: "The fact that a covenant is wholly unenforceable will not prevent one who has purchased a business from acquiring and enforcing the rights which have previously been shown to be incident to the sale of good will, apart from any special covenant."

In cases where the covenants as to space were not separable many courts have not hesitated to protect the purchaser by severing a portion of the territory "when the part severed can be removed by running a blue pencil through it." (We express no opinion upon this point) *Attwood* v. *Lamont*, L. R. 3 K. B. (1920) 571. See *Whiting Milk Co.* v. *O'Connell*, 277 Mass. 570; *Katz* v. *Newman*, 127 Atl. (N. J.) 255; *Brannen* v. *Bouley*, 272 Mass. 67.

We find no evidence to support respondent's plea of lack of consideration or his contention that the contract was induced by fraud. Although some complaint is made as to rulings which it is contended limited the general scope of inquiry along this line, no offer of proof was made. In

making the agreement respondent was represented by counsel and he was very familiar with this type of contract. He received $45,000 as consideration which he retains and he makes no request to rescind the contract.

It appearing that Rhode Island was territory served by complainant when respondent sold his interest, the complainant is entitled to protection as to that territory.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Max Winograd, McGovern & Slattery, James A. Higgins,* for complainant.

*Christopher J. Brennan,* for respondent.