KOPPERS PRODUCTS Co. *et al. vs.* JAMES H. READIO, JR.

MARCH 4, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill in equity in which the complainants are seeking to have the respondent permanently enjoined from violating an alleged agreement not to enter into competition with them in a certain locality. The case was heard in the superior court on bill, answer, replications and proof, and the trial justice entered a decree granting relief to the complainants. From the entry of this decree the respondent has appealed to this court.

The complainants contend that the evidence in the case fully supports the finding of the trial justice that an agreement of the nature stated was made by the parties. On the other hand, the respondent maintains that he entered into no such agreement with the complainants. The chief question in the case, therefore, is factual. The case was heard at some length and it is not necessary or possible to set out fully all the facts appearing in evidence. The following are those which are the more important.

Koppers Products Co., which heretofore operated under other corporate names, is a large organization and is the principal complainant. We will disregard these other names and hereinafter refer to it as Koppers. It now owns and controls the other complainant corporation. In 1920, the respondent and one Gill, both engineers, desired to organize a corporation to deal in tar products of various kinds. With the financial assistance of Bodell & Company, investment bankers of Providence, the Tar Products Corporation, a Rhode Island corporation, and now a complainant herein, was formed. This corporation built a refining plant in East Providence and shortly thereafter began to operate. The respondent and Gill respectively were in charge of the producing and selling ends of the business, and one Wood, who formerly had been employed by Bodell & Company, attended to the fiscal matters of the corporation.

Originally the respondent and Gill together held 45% of the common stock and Bodell & Company 55% of Tar Products. After Wood entered the corporation there was an adjustment with the result that each of the three men had 12½% of the common stock, and the remainder was held by Bodell & Company and its clients. For such a corporation to operate successfully it is necessary that there be available reasonably near the location of its refinery a sufficient supply of raw materials. Such materials are largely certain by-products of gas producing companies, such as coal and coke oven tar, holder and drip oils. When this new corporation was organized, it had a contract with the Providence Gas Company whereby the latter agreed to sell it the above-mentioned by-products. Tar Products entered into similar contracts with other nearby gas companies. Its business prospered from the start.

In the fall of 1926, Koppers, which had its headquarters in Pittsburgh, Pennsylvania, planned to set up a new by-products coke plant in New Haven, Connecticut. Information of this fact reached the men who were operating Tar Products. They apparently felt that the amount of new tar in this locality, from this new plant, might injuriously affect their company if they could not themselves obtain this raw material. Accordingly, through Bodell & Company an attempt was made to communicate with Koppers to ascertain whether the tar in question could be bought; or if not, then whether Tar Products could be sold to the larger organization. Correspondence followed and on December 1, 1926, one Forker, a vice-president of Koppers, came to Providence, talked with Bodell and looked the situation over.

Discussions concerning the proposed sale of Tar Products continued during January 1927. One Hunt, as assistant treasurer of Koppers, fixed the book value of the common stock of Tar Products at $78.52 per share, after examining its books. At Forker's request, Bodell, on February 1, 1927, obtained the approval of the officers and directors of the

last-named corporation to its sale. From about February 10 to April 13, 1927 negotiations continued, chiefly in regard to the price to be paid. At about the latter date it was agreed that Koppers should pay $110 per share for the common stock of the other corporation, provided that a new contract, for an extended period, with the Providence Gas Company for its raw materials was first obtained by Tar Products.

The working out of the details of the sale continued during May and June of 1927, there being numerous meetings during these months by representatives of both corporations. The agreement of sale, which was finally put in writing, was between Koppers and Bodell & Company, the latter apparently controlling a majority of the stock of Tar Products. By this agreement Bodell & Company was to obtain all or substantially all of the stock of the Tar Products and deliver it to Koppers for the price agreed upon. This subsequently was done. The agreement was drafted June 21, 1927 and was actually executed about a week later. A final meeting of the board of directors of Tar Products was held July 7, 1927. The respondent received approximately $27,000 for his shares of the common stock of the last-named corporation when the sale was consummated, and also $5000 for his share in a trucking concern which was sold by himself and Gill to Wood in connection with the sale of the corporation.

Thereafter Gill stayed on with Koppers and was its New England manager at the time of the trial. The respondent was employed by Koppers in New Jersey and Pennsylvania from about August 1, 1927 to March 31, 1928, at which time he voluntarily left its service. He then engaged in various business ventures, none of them connected with tar production, until the spring of 1935. In that summer he had some communications with Wood concerning the latter's recollection as to whether there was any verbal arrangement with the complainants concerning respondent's competing

with them in New England. Prior to that time he had written a letter to Forker asking for a position with Koppers and stating that he was planning to reenter the tar industry. Also in that summer one Olsen acquired an option on land suitable for a tar refinery near the plant being operated by Koppers in East Providence. Under the name of Tar Refining Corporation, apparently only a trade name, the respondent obtained from the town of East Providence a permit to erect a plant on that land. About this time the respondent also approached several gas companies in the vicinity of Providence in connection with the possible purchase from them of raw materials and by-products for refining purposes. The situation then came to the attention of the complainants and the present suit was instituted.

The agreement not to enter into competition with the complainants, upon which this bill is based, was allegedly made orally between Forker acting for and on behalf of Koppers and Gill and the respondent, at conferences, relating to the sale of Tar Products, held at the office of Bodell & Company on the 4th and 5th of May, 1927, and reaffirmed at the director's meeting of Tar Products held on July 7, 1927. The respondent denies that any such agreement was made by him. The complainants take the position that this was a separate agreement of employment between the respondent and Koppers, although the complainants also recognize that it was closely bound up and connected with the main agreement under which the last-named corporation purchased Tar Products. The making of such an agreement by the respondent not to enter into future competition with the complainants, particularly Koppers, is supported by the testimony of Bodell, Gill, Wood and Forker, and by inferences to be drawn from certain exhibits in the case. On the other hand, its making is denied only by the respondent. None of these witnesses can fairly be described as entirely disinterested.

According to the complainants' evidence, as the negotiations for the sale of the Tar Products proceeded, several of the men interested in that company, especially a Mr. Chapin, asked Forker, at the meetings in May above referred to, what was being done for the respondent and Gill, who were losing their positions by reason of the sale. It had been intimated by some of the stockholders and officers of Tar Products that they would not turn over their stock unless the respondent and Gill were in some manner provided for. Further discussion followed and then, according to Forker's testimony, "We agreed at that time that they were to be employed for at least three years with an internal agreement not to hurt or compete with this business, if they didn't go along or they left us voluntarily. There was a very clear understanding at that time." Other witnesses for the complainants testified in different language to substantially the same agreement, and to the fact that respondent and Gill stated that they assented to this arrangement. One of these witnesses gave evidence that the matter of tar contracts was referred to in this connection. Later on, in June 1927, Forker arranged with respondent and Gill some of the details of their employment, agreeing to pay them each $8000 per annum, the salary they had been receiving from Tar Products.

There was testimony on behalf of the complainants that the matter of the employment contract, so-called, came up again at the meeting of July 7, 1927, when inquiry was made as to whether or not respondent and Gill had been taken care of. It was then stated that definite arrangements had been made with these men and they had agreed not to hurt or compete with Koppers. Each of the men thereupon indicated that this was correct. A witness for the complainant testified that it was said at this July meeting that "these gentlemen have also agreed if they should voluntarily leave the acquired company not to enter into competition in the territory in which they had been doing business."

The trial justice in his rescript found that the making of an oral agreement, as contended for by the complainants, between Koppers and the respondent, whereby the latter was not to compete with the former, was shown by clear and convincing evidence. The trial justice saw and heard the witnesses testify. This undoubtedly assisted him in passing upon their credibility, in weighing the evidence and in drawing inferences therefrom. Such assistance is not available to us. The rule is well settled that in an equity case the findings of fact of the trial justice, based on conflicting evidence, are of great weight and will not be set aside unless they clearly fail to do justice between the parties. *Preble* v. *Higgins,* 43 R. I. 10; *Prudential Ins. Co. of America* v. *Tutalo,* 55 R. I. 160. We have examined the evidence and upon consideration cannot say that the findings of fact of the trial justice are clearly wrong or that they clearly fail to do justice between the parties. His finding, therefore, as to the making of the oral agreement in question stands.

The respondent, however, urges that even if the parties entered into such a noncompetitive agreement as the trial justice has found, it is unenforceable as a matter of law and is against public policy, and that the complainants' bill should therefore be dismissed. We are unable to agree with this contention. It has been held in this state, in passing upon the validity of contracts of the same general type as the one before us, that the test of reasonableness is the test of validity in such contracts. *Oakdale Mfg. Co.* v. *Garst,* 18 R. I. 484.

An instance in which this court held reasonable a contract in restraint of trade in which universality of time was involved appears in the case of *French* v. *Parker,* 16 R. I. 219. This same test of reasonableness has been applied by this court in passing upon the validity of so-called noncompetitive employment contracts as well as to contracts involving the sale of a business and its good will. Instances of so-

called employment contracts are found in the cases of *Herreshoff* v. *Boutineau,* 17 R. I. 3 and *Tillinghast* v. *Boothby,* 20 R. I. 59. Generally speaking, noncompetitive employment contracts are carefully scrutinized by the court and only enforced when reasonable and when the restriction does not extend beyond what is apparently necessary for the protection of those in whose favor they are made.

Upon consideration we cannot. say that the contract involved herein was against public policy or was so unreasonable as to be unenforceable as a matter of law. It is true that its terms are general, but at most it included only the territory in which Tar Products had been active. Other relevant facts shown by the evidence are that the respondent was one of the men in charge of the operations of that corporation; that the complainant Koppers was paying a good price for the stock of the former company; that apparently it did so to obtain outstanding favorable contracts for raw materials, an important consideration in the tar products business; and that such payment benefited the respondent financially.

In view of these facts it was not unreasonable for the complainant Koppers, in return for its agreement to employ the respondent, to insist upon an agreement from him that he would not later compete directly with it in the territory in which it was then operating. While the actual noncompetitive agreement was very possibly in the nature of an employment contract, nevertheless it was so closely connected with and an outgrowth of the contract of sale of Tar Products to Koppers, that all such circumstances are properly to be considered in passing upon the reasonableness of the contract entered into by the respondent. We do not find therefore that the bill should be dismissed by reason of any unreasonableness or invalidity in such contract.

The respondent further contends that the relief granted the complainants under the final decree entered herein and appealed from is broader and more comprehensive than

the evidence introduced on behalf of the complainants and the findings of the trial justice warrant. We are of the opinion that the respondent is correct in this contention. Under such a noncompetitive employment agreement as was found herein to have been made, courts go no further than is reasonably necessary in order to enforce the rights of the employer and protect its business. The objects and purposes of the agreement must be given consideration in determining the amount of relief to be granted. In the instant case the agreement which the trial justice found was established by the evidence, was somewhat general and vague. Not all of its details were made clear. Under such circumstances the employer cannot obtain relief as to matters left in uncertainty.

The evidence as to the agreement and the findings of the trial justice in connection therewith, particularly with reference to future competition from the respondent, clearly related only to the conduct of the business carried on at the refinery in East Providence as operated by Tar Products at the time the stock of said corporation was purchased by Koppers. Undoubtedly, according to the evidence, the obtaining of raw materials necessary to conduct such a business is its greatest necessity. The evidence tends to show that Koppers was vitally interested in this subject when it purchased Tar Products and entered into the noncompetitive agreement with the respondent. Further, it clearly appears that a corporation in the tar products business must, in order to operate successfully, obtain its raw materials from points in reasonably close proximity to its plant.

With these facts in mind, and considering that the complainants were merely trying to guard the newly acquired business in East Providence from competition on the part of the respondent, as one of its former officers; which is all the protection to which Koppers was reasonably entitled, under its agreement, from future acts of the respondent; we are of

the opinion that those portions of the final decree which enjoin the respondent directly and indirectly from purchasing or attempting to purchase tar and oils are too broad and extensive. We find that such dealings by the respondent in any capacity should be enjoined only as to those persons, firms and corporations from which Tar Products was actually purchasing its raw materials and supplies at the date of the sale of its stock to Koppers. Also, portions of the final decree enjoin the respondent directly and indirectly from actually selling or disposing of tar, oils and products manufactured therefrom, to any person, firm or corporation which had dealt with Tar Products as a regular customer thereof prior to July 7, 1927.

It is our judgment that this portion of the decree is too far reaching, is not justified by the evidence in the case and goes beyond the findings of the trial justice in his rescript. Such injunctive relief should be limited to preventing respondent from soliciting, directly or indirectly, orders for the above-mentioned articles from any person, firm or corporation which had dealt with Tar Products as a customer prior to July 7, 1927.

Further we are of the opinion, that, on the record herein, it was not necessary or proper to enjoin the respondent from making use of the name "Tar Refining Corporation." In all other respects than those above referred to, the decree in question is correct.

The respondent's appeal is denied and dismissed and the decree appealed from is affirmed, except in the particulars hereinbefore set out, in respect to which it is modified.

On March 18, 1938, the parties may appear before this court and present a form of decree, in accordance with this opinion, to be entered in the superior court.

*Hinckley, Allen, Tillinghast & Wheeler, Arthur M. Allen, Frederick W. Tillinghast, Noel M. Field,* for complainants.

*Charles E. Tilley, Eugene J. Phillips, Swan, Keeney & Smith,* for respondent.