William GORMLY, et al.,
Plaintiffs, Appellees,

v.

I. LAZAR & SONS, INC.,
Defendant, Appellee.

Gansett Steel Erectors Corp., a/k/a
Gansett Steel Erectors,
Defendant, Appellant.

No. 90–1760.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.

Decided Feb. 13, 1991.

Michael G. Sarli with whom Gidley, Lovegreen & Sarli, Providence, R.I., was on brief, for defendant, appellant.

Raymond A. LaFazia with whom Gunning, LaFazia & Gnys, Inc., Providence, R.I., was on brief, for defendant, appellee I. Lazar & Sons, Inc.

Before SELYA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This case is something of a legal cat's cradle, due, in part, to contractual, statutory, and judicial input, but due also to appellant's attempt to negate the court's procedure designed to simplify resolution. In 1985, I. Lazar & Son, Inc. (Lazar), a general contractor, undertook to construct a building in Pawtucket, Rhode Island. It employed Gansett Steel Erectors Corporation (Gansett) as a subcontractor. Thereafter, William Gormly, an employee of Gansett, was injured on the job when a steel column fell on him. He received Workers' Compensation benefits, depriving him of a right to recover against Gansett, R.I. Gen. Laws § 28–29–20 (1986 Reenactment), but sued Lazar for negligence. Lazar crossclaimed against Gansett, seeking full indemnity for damages it would have to pay Gormly if the jury found Lazar negligent. In answer to special questions, the jury, after returning a verdict in favor of Gormly against Lazar, found that Gormly's injuries were due 70% to Lazar's fault and 30% to Gansett's. The court entered judgment on the cross-claim in Lazar's favor against Gansett for 30% of Gormly's recovery. This it did pursuant to its construction of an indemnity agreement in the contract and Rhode Island law. Although Lazar had sought full indemnity, it does not appeal. Gansett does. We affirm.

The indemnity agreement read as follows,

4. Subcontractor assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever for which Contractor shall be liable under the Contract Documents or by operation of law with respect to the scope of the work covered by this subcontract and agrees to indemnify and save harmless the Contractor and/or Owner from any loss, liability, expense, including attorneys' fees, damages or injuries caused or occasioned, directly or indirectly, in connection therewith.

Gansett contends that Lazar's recovery is barred by R.I. Gen. Laws § 6–34–1 (1985 Reenactment). This provides that an agreement by a subcontractor to indemnify a general contractor in the construction industry for "liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence of the promisee ... is against public policy and is void." When, during trial, Lazar sought to introduce the contract, Gansett objected because the indemnity provision so read. After discussion, the contract was marked for identification, and a redacted copy, omitting the indemnity provision and some references to insurance, was introduced and given to the jury. Thereafter, in anticipation of questions of law as to the contract, but without committing itself to a ruling, the court put the special questions to the jury. Upon receiving the findings, it ruled that Lazar should be indemnified to the extent of Gansett's share of the negligence.

Gansett's first contention is that the full contract, and hence the indemnity agreement, was not in evidence. We are surprised. Throughout the trial there were discussions between the court and counsel as to the legal effect of the indemnity provision. When, at the end, Gansett claimed that it was not before the court, the court said that that was not accurate; that it was not before the jury. It added that if the argument was that it was not before the court because not marked as an exhibit, "then I'm going to let him reopen and put the agreement in. I'm not going to let things go that way." Gansett's only response was that the agreement was not in evidence because it was "unenforceable under Rhode Island law."

We note a further incident. Later, Lazar's counsel stated his understanding was that "when we get the answers back from them as to the percentage of negligence, then the Court as a matter of law could rule on the validity of the indemnity agreement." The court stated, "That's my understanding, also.... That's the manner in which I intend to proceed." Gansett said nothing. We feel more than surprise that it should now attempt to assert an evidentiary technicality. Its complaint is totally frivolous.

Turning to the contract, we might wonder how, when the prohibition in § 6–34–1 against contractual indemnification for the promisee's own negligence had been in effect since 1977, Lazar, in 1985, could have drafted and entered into a self-benefiting agreement that directly violated this declaration of public policy.[1] Even when it brought suit Lazar sought judicial assistance to enforce full indemnity.[2] Of necessity, this would include indemnity for its own negligence, for, unless it was negligent, there would be no liability in the original action.

No principle of law is better settled than that a party to a contract that is contrary to public policy cannot come into a court of law and ask to have it enforced for his benefit.

*Cianciarulo v. Caldarone*, 69 R.I. 86, 89, 30 A.2d 843, 845 (1943). Lazar did ask, and the court responded by rewriting the contract so as to make its terms legal. The court took this step as a matter of course, finding itself "governed" by the case of *Cosentino v. A.F. Lusi Constr. Co.*, R.I., 485 A.2d 105 (1984). While we agree, and must, of course, accept the Rhode Island law, *Tarr v. Manchester Ins. Co.*, 544 F.2d 14, 15 (1st Cir.1976) (per curiam) (*Erie* "calls on us to apply state law, not, if we can be persuaded to doubt its soundness, to participate in an effort to change it"), we

do not find the district court's conclusion so apparent.

In *Cosentino* the subcontractor, Otis, agreed to indemnify the general, Lusi, against all claims or demands

arising out of or resulting from the performance of the Subcontractor's Work under this subcontract ... to the extent caused in whole or in part by any negligent act or omission of the Subcontractor ... regardless of whether it is caused in part by a party indemnified hereunder.

In the superior court the three parties were aligned as here. Lusi, cross-claimant, advanced three grounds for recovery—tort contribution, express, and implied, indemnity. Otis, as third party defendant, moved for summary judgment. The superior court, concededly properly, ruled that the Workers' Compensation Act forbad tort contribution. *Cacchillo v. H. Leach Mach. Co.*, 111 R.I. 593, 305 A.2d 541 (1973). Without analyzing the contract,[3] it ruled that § 6–34–1 barred indemnification and dismissed the complaint.

On Lusi's appeal the court affirmed the adverse ruling as to contribution, but as to indemnity, said the following:

The clear and direct mandate of *§ 6–34–1 bars the enforcement of that portion of the indemnification clause that attempts to indemnify Lusi for any negligence on its part.* However, there is nothing in § 6–34–1 that bars Lusi from attempting to secure indemnification from Otis for claims resulting from negligence on the part of Otis or of any subcontractor employed by Otis.

. . . .

*[W]e perceive no reason why the expressed intent of the parties* in a contract calling for payment by Lusi to Otis of $81,350 *should not be effectuated.* (Emphasis supplied.)

sustained as a result of the suit by the original plaintiffs."

---

1. However, we note that as late as 1983, a subcontractor neglected to rely on the statute. *See Corrente v. Conforti & Eisele Co., Inc.*, R.I., 468 A.2d 920 (1983).

2. "[I]n accordance with said agreement, it is entitled to full indemnity ... for any damages

3. We have taken judicial notice of the Rhode Island Supreme Court record that so shows. *E.I. DuPont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir.1986).

*Cosentino,* 485 A.2d at 107. The court remanded "for a determination concerning the negligence of Otis and its responsibility under the indemnification clause." *Id.* at 108.

Thus, finding a portion of the agreement, to indemnify Lusi for Lusi's own negligence, illegal, and finding an expressed intent to pay for its own negligence, the court rejected the first portion as illegal and left the other standing. It is to be observed that although the *Cosentino* court cited a number of authorities regarding contribution and workers' compensation, it cited none for this partial enforcement of an illegal contract, or even mentioned the subject. *Sub silentio,* it followed the procedure known as the "blue pencil doctrine." *See Durapin, Inc. v. American Prods., Inc.,* R.I., 559 A.2d 1051, 1058 (1989). In the case at bar Gansett's illegal obligation was single, and not subject to cure by mechanical excision. It was not until *Durapin* that the court, after reviewing authorities elsewhere, adopted the broadest form of relief, permitting modification of illegal agreements that were indivisible on their face.

> We believe this is the appropriate time to choose the route that permits unreasonable restraints to be modified and enforced, whether or not their terms are divisible, unless the circumstances indicate bad faith or deliberate overreaching on the part of the promisee.

*Id.* On this new basis it was proper to extend *Cosentino*'s treatment of § 6–34–1 to a single, indivisible undertaking, and enforce the balance, "absent bad faith or deliberate overreaching." [4]

It is true that *Durapin* involved an agreement judicially found to be an unreasonable restraint of trade and not one that was specifically "void." However, to draw this distinction would not seem in accord with the Rhode Island decisions. *See also* Restatement (Second) of Contracts § 184

---

**4.** We might say, on behalf of the district court, that we sympathize with its interpretation of the Lusi agreement as being single, and not two separate provisions, so that the decision exactly applied to the instant case. However, the Rhode Island court read it as two, and it was

(1979). Had Gansett contended, and succeeded, in showing that Lazar drafted this void agreement with the hope of recovering, from a somnolent subcontractor, more than it was entitled to, *see Corrente,* 468 A.2d at 923, we might have a different case. Absent that, we affirm.

only in *Durapin,* five years later, that it announced its adoption of the modifying-the-indivisible rule. *See Max Garelick, Inc. v. Leonardo,* 105 R.I. 142, 147–48, 250 A.2d 354, 357 (1969) (rule not yet adopted for indivisible provisions.)