A AND B CONSTRUCTION, INC.

v.

ATLAS ROOFING AND SKYLIGHT
COMPANY.

No. 93–0162L.

United States District Court,
for the District of Rhode Island.

Oct. 17, 1994.

102

John P. Graceffa, Gallagher & Gallagher, P.C., Boston, MA, Ronald P. Langlois, Providence, RI, for plaintiff.

Robert W. Smith, Gunning, LaFazia & Gnys, Providence, RI, for defendant.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This diversity action is before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The issue raised is whether, under Rhode Island law, a subcontractor who has paid workers' compensation benefits to its injured employee must indemnify a third-party general contractor for the settlement amount it paid to the injured worker. This Court holds, as a matter of law, that plaintiff is not entitled to indemnification under any indemnity theory and accordingly denies plaintiff's motion for summary judgment and grants summary judgment in favor of defendant.

## BACKGROUND

Plaintiff A & B Construction, Inc. ("A & B") is a Rhode Island corporation with its principal place of business in East Providence, Rhode Island. Defendant Atlas Roofing & Skylight Co., Inc. ("Atlas") is a Massachusetts corporation having its principal place of business in Massachusetts. It is agreed that Rhode Island law applies. The parties submit the following undisputed facts.

In October of 1989, A & B was hired as general contractor for a warehouse construction project in East Providence, Rhode Island. To complete the project, A & B hired Atlas as a subcontractor to do roofing work, including the installation of skylights. A subcontract agreement, drafted by A & B, was executed by the parties on October 29, 1989. That agreement constituted the entire, complete, and integrated contract between the parties. No other written or oral agreements, additions, or amendments to the October 29, 1989 subcontract were made.

The October 29, 1989 subcontract agreement provided:

Job Specifications: Furnish all necessary labor,

materials, and equipment to install the following: roof

system as shown on plans prepared by R.K.C. revised

9–11–89.

Approx. 12,742 sq. ft. of 2″ Class I insulation

Firestone Ballaster Roof

Flash 2 roof top with pitch pocket

Flash 4 unit heater vent stacks

Flash 3 plumbing vents

Flash 8 4′ × 4′ skylights

Flash parapet around 3 sides of the building

Furnish and install 5 aluminum downspouts with gutters

Furnish 10 year warranty

Skylights and wood blocking will be supplied by A and B

Construction, Inc.

The subcontract further provided:

The above-specified project is to be completed in strict conformance with all specifications and conditions relating to this agreement. In addition, the project is to be performed in compliance with OSHA Regulations [1] and local, state and national building codes. Although the contractor has control over the quality of all work relating to this project, the subcontractor is an independent contractor in all re-

---

1. OSHA regulations state that "Whenever there is a danger of falling though a skylight opening, it shall be guarded by a fixed railing on all exposed sides or a cover capable of sustaining the weight of a 200 pound person." 27 C.F.R. § 1926.500(b)4.

spects. The subcontractor is responsible for his employees, his subcontractors, materials, equipment and all applicable taxes, benefits and insurances. The subcontractor is responsible for coordinating his activity with other trades and promptly cleaning up any surplus or refuse which was created by his work.

Atlas' subcontracting work on the warehouse was expected to take one day. On December 12, 1989, one of Atlas' employees, Mark Silva, was injured as he worked on the warehouse. Unfortunately, Silva fell through a skylight opening in the roof while he was laying down insulation.

The opening through which Silva fell had been cut by A & B and/or one of its subcontractors so that one of eight skylights could be installed. To prevent injuries, each of the skylight openings should have been sealed with wood blocks. However, on December 12, 1989, A & B and/or one of its subcontractors were still in the process of wood blocking the skylight openings. As a result the openings to all of the eight skylights remained uncovered on the day that Silva was injured.

As a result of the job-related injury, Silva received workers' compensation benefits paid by Atlas' insurer under the Massachusetts Workers' Compensation Act. Silva subsequently filed suit against A & B in the United States District Court for the District of Rhode Island. A & B, in turn, filed a third-party complaint against Atlas in that case. Silva ultimately settled his action against A & B on May 21, 1992. A & B dismissed the third-party complaint against Atlas without prejudice in order to proceed to final settlement with Silva. Later, A & B brought this action seeking indemnification against Atlas on March 18, 1993.

In this case, Steven Agostini, the President of A & B, alleges that he believed that Atlas was assuming responsibility for its employees when it signed the subcontract, including safety obligations such as OSHA compliance. A & B also claims that it was Agostini's understanding that Atlas was agreeing to indemnify A & B should any accidents arise due to Atlas' failure to adhere to safety regulations.

After discovery was complete in this case, each party filed a motion for summary judgment. After a hearing on the cross motions was held on May 18, 1994, the matter was taken under advisement. It is now in order for decision.

## DISCUSSION

The standard for ruling on a summary judgment motion is set forth in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

Further, the court must view the facts and all inferences therefrom in the light most favorable to each nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). When there are no material facts in dispute on cross motions for summary judgment, the court must resolve the legal issues by determining which moving party is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The Rhode Island Workers' Compensation Act ("RIWCA"), R.I.Gen.Laws §§ 28–29–1 to –38–25 (1986), is a no-fault system of compensation for personal injuries sustained by employees arising out of and in the course of their employment. Its purpose is to provide a simple and expeditious procedure by which employees or their dependents can receive compensation benefits from an employer regardless of fault. It is the exclusive remedy available to injured employees from their employers. R.I.Gen.Laws § 28–29–20.

■ In essence, the RIWCA is a compromise. Employees relinquish any cause of action for personal injuries against their employer, and employers are deprived of certain common law defenses previously made available to them. *Mustapha v. Liberty Mut. Ins. Co.*, 268 F.Supp. 890 (D.R.I.1967). The RIWCA recognizes, however, that an employee might be injured under circumstances

that create a cause of action against a third party. In view of this possibility, the RIWCA allows the employee to bring suit against the third party for damages, even though the employee could simply recover compensation from his employer under the RIWCA. R.I.Gen.Laws § 28–35–58. When an injured employee does recover against a nonimmune third party, he becomes obligated to reimburse his employer (or the employer's insurance carrier) for any compensation already paid pursuant to the RIWCA. *Cf. Travis v. Rialto Furniture Co.*, 101 R.I. 45, 220 A.2d 179 (1966).

 Generally, indemnity is an obligation owed by one party to another whereby the indemnitor agrees to make good any loss or damage incurred by the indemnitee while acting at the indemnitor's request or for his benefit. 41 Am.Jur. *Indemnity* § 1 (1986). It is a relationship, independent of any other, and can be express, implied-in-fact, or implied-in-law. *See generally Araujo v. Woods Hole, Martha's Vineyard, Etc.*, 693 F.2d 1, 2 (1st Cir.1982). Although indemnity implied-in-law is based on quasi-contract, a legal fiction created to impose equity rules on courts of law, indemnity is an obligation conceived independently of an underlying tort and, therefore, follows contract principles.

 Although contribution and indemnity share points of resemblance, the independent character of indemnity sets it apart from contribution. The doctrine of contribution requires that persons under a common burden bear responsibility in equal proportion to fault so that one party shall not be burdened more than his just share to the advantage of his co-obligors. 18 Am.Jur. *Contribution* § 5 (1986). Thus, the right of contribution is a derivative right and not an independent cause of action. *Cacchillo v. H. Leach Mach. Co.*, 111 R.I. 593, 305 A.2d 541, 543 (1973); *Rowe v. John C. Motter Printing Press Co.*, 273 F.Supp. 363 (D.R.I.1967). Indemnity, on the other hand, is an independent cause of action. When implied-in-law, indemnity results in the establishment of a quasi-contractual relationship between two parties. When one party has conferred a benefit upon another as when it is compelled to discharge a legal obligation to a third, the second party may be held to indemnify the first even where it was never liable to the third. Therefore, while both indemnity and contribution may work to benefit a tortfeasor who discharges a disproportionate share of common or joint liability, the obligations are distinct from one another.[2]

In this case, an employee (Silva) sustained personal injuries in the course of his employment for which he has received workers' compensation benefits as his exclusive remedy from his employer (Atlas). He then initiated an action against a third party (A & B), which elected to settle the case. A & B now alleges that Atlas had previously obligated itself to indemnify A & B under an express, implied-in-fact, or implied-in-law contract for the liability it incurred as a result of Atlas' negligence.

While it has never been judicially determined whether either party here was negligent, there are only three possible permutations to relative fault between the two. Either A & B was wholly at fault, Atlas was wholly at fault, or each is partly at fault for Silva's injury. If A & B was wholly at fault, it cannot seek indemnity from Atlas as a matter of public policy. R.I.Gen.Laws § 6–34–1. If Atlas was wholly at fault, then A & B was never legally obligated to discharge any obligation to Silva and cannot seek indemnity from Atlas. Therefore, the Court must assume for purposes of this case that both A & B and Atlas were guilty of some negligence in causing the injury to Silva.

 Ordinarily, contribution is the remedy available between joint tortfeasors. If the exclusive remedy provision of the RIWCA was ignored in this case, A & B would only have a right of contribution against Atlas. Because of the exclusive remedy provision, however, Atlas cannot be made liable to Silva in tort and therefore, as a matter of law, cannot be a joint tortfeasor

---

2. As discussed later, in *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986), the Rhode Island Supreme Court devised a three pronged test for applying indemnity implied-in-law. As that Court has defined it, the demarcation line between contribution and indemnity implied-in-law, in Rhode Island, is unclear at best.

with A & B. It is well settled in Rhode Island, as in the majority of jurisdictions, that an employer who has paid workers' compensation benefits cannot be sued as a joint tortfeasor for contribution by a third party even where its concurring negligence has contributed to an employee's injury. *Gormly v. I. Lazar & Sons, Inc.*, 926 F.2d 47 (1st Cir.1991); *Iorio v. Chin*, 446 A.2d 1021 (R.I. 1982); *Cacchillo v. H. Leach Mach. Co., supra*, 111 R.I. 593, 305 A.2d 541 (1973). *See* 2B Arthur Larson, *The Law of Workmen's Compensation* § 76.20 (1994) (hereinafter "*2B Larson*"). In so ruling, the Rhode Island Supreme Court indicated that even though unfairness to a third party may result, the inequity is an unavoidable consequence of achieving the legislature's compensation scheme. *Cacchillo, supra*, 305 A.2d at 543; *National India Rubber Co. v. Kilroe*, 54 R.I. 333, 173 A. 86, 87 (1934). *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 50 (5th ed. 1984).

A & B, without a right of contribution in this case, thus attempts to find an indemnity theory to hang its hat on which, of course, does not derive from the underlying tort. A & B must claim, therefore, that Atlas' obligation to indemnify is independent of Atlas' immunity under the exclusive remedy provision of the RIWCA. *See Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 132–34, 76 S.Ct. 232, 236–38, 100 L.Ed. 133 (1956); *U.S. Fidelity & Guar. Co. v. Kaiser Gypsum Co., Inc.*, 273 Or. 162, 539 P.2d 1065 (1975).

A & B's first line of attack is to assert that Atlas' obligation to indemnify comes from the language of the subcontract. Alternatively, A & B contends that Atlas' duty to indemnify can be implied either from the factual circumstances surrounding the contractual relationship (indemnity implied-in-fact) or from a legal relationship based upon equitable considerations (indemnity implied-in-law).

This Court concludes that Atlas did not obligate itself to indemnify A & B by contract, express or implied, and that it would violate public policy to judicially impose a duty on Atlas to indemnify A & B under these circumstances. Accordingly, the Court decides that Atlas is not liable to indemnify A

& B in this case under any legal theory advanced by A & B.

## I. Express Contractual Indemnity

■ Clearly, a right to indemnification can be created by express contract. Independent of other duties and obligations, the indemnitor can expressly agree to save and hold the indemnitee harmless against any loss, damage, and/or liability. Insurance contracts are typically indemnity contracts. The insurance company is not originally liable to an injured party but accepts the liability of its contractee for valuable consideration.

In most jurisdictions, express contractual indemnity is not considered inconsistent with an employer's immunity provided by the applicable workers' compensation scheme. Arthur Larson, *Third Party's Action Over Against Workers' Compensation Employer*, 1982 Duke L.J. 483, 500 (1982); *2B Larson* § 76.42 n. 37. Because it is an independent obligation and was bargained for by the parties, express contractual indemnity is enforceable notwithstanding any exclusive remedy provisions of the applicable workers' compensation scheme. *See 2B Larson* § 76.42; *but see Paul Krebs & Associates v. Matthews & Fritts Construction Co.*, 356 So.2d 638 (Ala.1978).

■ Consistent with this majority approach, Rhode Island courts enforce express contractual indemnification provisions against employers, notwithstanding RIWCA's exclusivity limitation on employer liability. *Cosentino v. A.F. Lusi Constr. Co., Inc.*, 485 A.2d 105, 107–08 (R.I.1984). Although R.I.Gen.Laws § 6–34–1 prohibits contracts which purport to indemnify a potential indemnitee for its own negligence as being contrary to public policy, an indemnitor may expressly agree to save and hold an indemnitee harmless for its own indemnitor negligence. *Cosentino*, 485 A.2d at 107. In *Cosentino*, the Rhode Island Supreme Court held that a subcontractor was bound by contract to indemnify its general contractor for its own subcontractor negligence. Thus, because express contractual indemnity is permissible in Rhode Island in spite of the ex-

clusive remedy provision of the RIWCA, the first question which the Court must decide in this case is whether there is an express obligation to indemnity imposed on Atlas by the subcontract. After examination of the subcontract, this Court holds that there is no express promise to indemnify on Atlas' part contained in that document.

A & B argues that the Court should infer from the language in the subcontract that Atlas agreed to save and hold A & B harmless for any liability resulting from Atlas' negligence. Whether there is a duty to indemnify based on language in an existing express contract is a matter of contract interpretation. While *Cosentino* does not set forth a standard for construing express indemnity contracts, other Rhode Island decisions in this area persuade the Court that the exception carved out in *Cosentino* can only be created by the clear and unambiguous expression of the parties. *Vaccaro v. E.W. Burman, Inc.*, 484 A.2d 880 (R.I.1984), affirming this writer's decision issued in 1982 and *Dower v. Dower's, Inc.*, 100 R.I. 510, 217 A.2d 437 (1966). Moreover, purported indemnity language is to be strictly construed against the party seeking indemnification. *Di Lonardo v. Gilbane Building Co.*, 114 R.I. 469, 334 A.2d 422, 423 n. 1 (1975) [3]; *Gordon v. Campanella Corp.*, 112 R.I. 417, 311 A.2d 844, 849 (1973).

A & B has conceded that the subcontract is not a "model of clarity." When viewed strictly against A & B, the suggestion that the pertinent language, "The subcontractor is responsible for his employees, his subcontractors, materials, equipment and all applicable taxes, benefits and insurances," constitutes a save and hold harmless provision is totally without merit. *Cf. Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986). Thus, as a matter of law,

Atlas had no express obligation to indemnify A & B for its settlement with Silva.

## II. Indemnity Implied–In–Fact.

An indemnity contract can also arise from the factual circumstances surrounding the relationship between the parties. Such indemnity is said to be implied-in-fact or implied contractual indemnity. Implied-in-fact indemnity effectuates the parties' intent in the absence of an express contract. The Rhode Island Supreme Court has assumed that a right of indemnity can be implied-in-fact, *see Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 335 A.2d 339, 341 (1975), but has never so held. Many years ago Judge Day of this Court assumed that the doctrine existed in workers' compensation cases, *Atella v. General Electric Co.*, 21 F.R.D. 372, 374 (D.R.I.1957) ("In the absence of an express contract the obligation to indemnify may arise from undertakings implicit in relationships assumed."); *Whitmarsh v. Durastone Co.*, 122 F.Supp. 806, 811 (D.R.I. 1954); but no case has squarely addressed whether the Rhode Island Supreme Court would permit implied-in-fact indemnity where it would impose additional liability on an employer over and above the compensation benefits paid, and in spite of the exclusive remedy provision of the RIWCA. This issue appears to be one of first impression for Rhode Island courts. This Court believes that, when faced by the issue, the Rhode Island Supreme Court will not permit implied-in-fact indemnity to impose greater liability upon an employer than is intended by the RIWCA.

A & B here contends that, although not expressed in the contract, the parties intended that Atlas would save and hold A & B harmless for any damage, loss, or liability resulting from its negligence. Furthermore, A & B argues that the intent of the parties is

---

**3.** This writer was the trial judge in that case. DiLonardo was an employee of the plumbing subcontractor Cuddigan. Gilbane was the prime contractor on this construction project at Rhode Island Hospital. DiLonardo was injured on the job by virtue of the negligence of Gilbane (a jury so found) and Gilbane sought indemnification from Cuddigan (who had paid workers' compensation benefits) because the subcontract provided expressly that Cuddigan would indemnify Gilbane for any injuries to Cuddigan employees even if caused by Gilbane's negligence. This writer deemed such a contract to be contrary to public policy but the Rhode Island Supreme Court reversed. However, a year later the General Assembly adopted this writer's views and reversed the Supreme Court prospectively by passage of R.I.Gen.Laws § 6–34–1.

a material question of fact, thus making summary judgment for Atlas inappropriate in this case. While the Court acknowledges that the existence of an implied-in-fact contract is often a question of fact (as where there is a dispute as to the underlying facts), it rules as a matter of law that implied-in-fact indemnification under these circumstances would circumvent the exclusive remedy provision of the RIWCA and, therefore, would be contrary to public policy.

 Even though implied-in-fact contracts generally have the same legal effect as express contracts and the sole difference is the manifestation of assent by the parties thereto, what is of paramount importance is the degree of the effectiveness of the expressions used. 1 J. Perillo, *Corbin on Contracts* § 1.19, at 56–57 (1993). Clarity of expression determines the reasonableness of the understanding of the parties and thus dictates the outcome in case of dispute. *Id.* Whereas the Rhode Island Supreme Court has already held that indemnity contracts are to be clearly and unequivocally expressed, *Vaccaro,* 484 A.2d at 881, *Dower,* 217 A.2d at 437 and strictly construed against the party seeking indemnification, *Di Lonardo,* 334 A.2d at 423 n. 1, *Gordon,* 311 A.2d at 849, the Court concludes that there is no basis for implying contractual indemnity where the parties intent is unclear, where the parties had the opportunity and ability to expressly so provide and did not, and where implying contractual indemnity would have the effect of circumventing the legislative intent expressed in the RIWCA. The Rhode Island Supreme Court has consistently refused to subvert legislative intent. *See, e.g., DiQuinzio v. Panciera Lease Co., Inc.,* 641 A.2d 50, 55 (R.I.1994); *Boucher v. McGovern,* 639 A.2d 1369, 1375 (R.I.1994); *Cacchillo, supra,* 305 A.2d at 543; *National India Rubber Co., supra,* 173 A. at 87. It is, therefore, the Court's conclusion that the Rhode Island Supreme Court would hold that imposing an implied-in-fact duty to indemnify on a party immunized from liability by the exclusive remedy provision of the RIWCA would be violative of public policy.

 Although the term "public policy" is somewhat vague, it can be stated with confidence that a contract or agreement is contrary to public policy if it is injurious to the interests of the public, interferes with public welfare and safety, is unconscionable, or tends to lead to injustice or oppression. *City of Warwick v. Boeng Corp.,* 472 A.2d 1214, 1219 (R.I.1984). No contract rights are created by agreements in contravention of a state statute. *Power v. City of Providence,* 582 A.2d 895, 901 (R.I.1990). Whether implied-in-fact indemnity would violate the public policy established in the RIWCA is for the judiciary to decide. *See id.* And where the clear policies of a state statute are in conflict with other established doctrines of law, the matter becomes one for the legislature to adjust and fine tune. *See id.* This Court can only assume that the Rhode Island General Assembly weighed all of the competing considerations when it enacted §§ 28–29–20 and 28–35–58. Any complaints of inherent unfairness in the statutory scheme should be addressed to the General Assembly itself. *See Freund v. Utah Power & Light Co.,* 793 P.2d 362, 369 (Utah 1990).

 Allowing indemnity implied-in-fact in the workers' compensation context would impose on an employer greater financial obligations than the legislature obviously intended. If viewed in a vacuum, implied-in-fact indemnity is not "on account of" an employee's injury but rather "on account of" an employer's independent covenant to reimburse a third party for damage, loss, or liability flowing from its negligence. However, compelling an employer to bear the burden of supplying no-fault insurance to its employees and also cover liability for its own negligence when it occurs concomitantly with that of another tortfeasor is contrary to the system of compensation the legislature intended to design. The legislature intended the RIWCA to establish an acceptable, ascertainable, and reliable limit to employer liability for injuries arising out of and in the course of an employee's employment. The intended effect of the exclusive remedy provision, R.I.Gen.Laws § 28–29–20, was to exclude any common law action against the employer on account of such an injury. *Cacchillo,* 305 A.2d at 543–44.

One cannot dispute that an employer can undertake such an express obligation voluntarily; however, to imply such an obligation from circumstances surrounding the relationship of the parties is to judicially waive the statutory immunity provided by the RIWCA. *See American Radiator & Standard Sanitary Corp. v. Mark Eng'g Co.,* 230 Md. 584, 187 A.2d 864 (1963); *Royal Indemnity Co. v. Southern Cal. Petroleum Corp.,* 67 N.M. 137, 353 P.2d 358, 362 (1960). Such a radical departure from the reasonable expectations of the parties is unwarranted in the absence of a clear expression in the contract. *New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc.,* 380 Mass. 734, 405 N.E.2d 653 (1980).

Since *Cacchillo,* the Rhode Island Supreme Court has consistently refused to ignore the clear legislative intent expressed in the RIWCA. *See, e.g., DiQuinzio v. Panciera Co., Inc.,* 641 A.2d 50, 55 (R.I.1994); *Boucher v. McGovern,* 639 A.2d 1369, 1375 (R.I.1994); *Fish v. Burns Bros. Donut Shop,* 617 A.2d 874, 875 (R.I.1992).

All Rhode Island employers are chargeable with knowledge of the exclusive remedy provision of the RIWCA. Had the parties here intended that there be a save and hold harmless clause in the contract, they, and A & B in particular who drafted the contract, had ample opportunity to include one. Courts imply contract terms in order to conform the agreement to the evident intent of the parties. It is illogical to conclude that where an agreement to indemnify is not included in an express agreement between the parties, it was nevertheless their intent to do just that. When a party wishes to alter the exclusive remedy provision of the RIWCA so as to require a contracting employer to indemnify it, it is not onerous to require that the contract expressly make provision for it. This rule is consistent with the legislature's workers' compensation design and the Rhode Island Supreme Court's consistent preservation of it.

As principal support for its claim, A & B cites *Roy v. Star Chopper Co.,* 442 F.Supp. 1010 (D.R.I.1977), *aff'd* 584 F.2d 1124 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), which recog-

nized implied-in-fact indemnity (in spite of the exclusive remedy provision of the RIWCA) in a contract between a manufacturer and its vendee in a products liability case. *Roy* involved an employee who was injured while operating a machine for his employer. After collecting workers' compensation benefits, the employee brought an action against the manufacturer based on strict liability. The manufacturer impleaded the employer for indemnification arguing that, although there was no express contract between the parties, the employer impliedly undertook an obligation to indemnify the manufacturer for any liability it incurred arising out of the misuse or alteration of the machine.

Evaluating similar contractual and non-contractual claims, in light of the exclusive remedy provision of the Massachusetts Workers' Compensation Act, Judge Pettine of this Court dismissed the non-contractual claims against the employer because it had already paid workers' compensation benefits. However, in applying Rhode Island substantive law, he implied a contract of indemnification between the employer and the manufacturer despite the exclusive remedy provision of the RIWCA. *Roy,* 442 F.Supp. at 1018. Judge Pettine acknowledged that there was an absence of Rhode Island caselaw on the subject. Recognizing the potential for undermining the policies surrounding strict products liability and workers' compensation, he narrowly confined his holding to the allegations and evidence in that particular case. *Id.* at 1020.

While Judge Pettine did not propose that the mere fact of a contractual relationship between the would-be indemnitee and indemnitor would necessarily give rise to an implied obligation to indemnify, he reasoned that the employer, by expressly undertaking to install safety devices in assembling the machine, had impliedly waived its immunity under the Massachusetts Act by failing to so perform. *Id.* at 1021. In support of this position, Judge Pettine found that "the policy of strict liability—to protect users from defective products—is best preserved by this arrangement." *Id.* The injured worker can recover in strict liability against the manufacturer and the manufacturer is liable for the

entire judgment regardless of the indemnity claim. At the same time, the employer who promises to install safety devices is liable to indemnify the manufacturer and thus has a financial reason over and above compensation liability to carry out its promise. *Id.* The additional liability imposed on the employer is commensurate with the added responsibility it has assumed over and above the ordinary employer. Therefore, the manufacturer who relies on the employer's promise and the employer making the promise each have greater economic incentives to guarantee that safety devices are in fact installed. *Id.*

*Roy* was a strict products liability action; the manufacturer was made liable without being guilty of negligence. Here, A & B, it must be assumed, was guilty of some negligence and thus should not be indemnified in full. Therefore, *Roy* is clearly distinguishable.

Arguably, in the strict liability context, a just result is reached by implying indemnity from the factual circumstances surrounding a contractual relationship where a third party's liability is attributable solely to the negligence of the claimed indemnitor. Where there is no amount of precaution a third party can take to protect itself from the malfeasance of another, it is in the interests of both justice and safety to thrust some of the liability upon a party that has no other incentive to perform safely and in a workmanlike manner. However, in this case, the duty owed by A & B to the injured worker was independent of the contract with the employer. The undertakings implicit in the relationships before the Court are entirely different than those in *Roy*. A & B's tort liability derives from its own negligence rather than that of its subcontractor, Atlas.

A & B owed an independent duty to Atlas' employee to maintain a safe worksite regardless of the obligations owed to him by Atlas. This duty A & B cannot contract away, nor can it contract for another to indemnify it for breach of its own obligations. R.I.Gen.Laws § 6–34–1.

Consequently, the sound rule of law is that unless otherwise expressed between the parties, the general contractor is liable for its own negligence, as well as the concurring negligence by its subcontractor. Knowledge of this rule is chargeable to both parties at the inception of the contract. There is no necessity for altering the statutory scheme where a third party is held liable on account of its own tort rather than on account of its contract with another. It would stretch contract principles beyond their breaking point to employ implied-in-fact indemnity to thrust all liability on the subcontractor when a right to contribution in favor of the general contractor does not even exist.

Therefore, refusing to give legal effect to implied-in-fact indemnity under these circumstances is not inconsistent with Judge Pettine's reasoning in *Roy*. In *Roy*, the employer's knowledge and considerable experience with industrial machinery served as a basis upon which to imply indemnity-in-fact. Here A & B, a corporate entity with considerable experience in construction contracts, was in a superior bargaining position to negotiate an express indemnification provision. *See Roy*, 442 F.Supp. at 1021–22. In this case, it is hardly unconscionable to hold each party to the obligations set forth by their agreement without implying additional provisions not expressed by the parties. *Id.* There is no reason for this Court to become lost in the labyrinth of contorting contract law to imply an indemnity agreement where the parties were perfectly free to express their own intentions. *Golden Valley Electric Assoc., Inc. v. City Electric Service, Inc.*, 518 P.2d 65, 68 (Alaska 1974).

A & B also relies on the outdated principles of maritime law stated in *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955). The underpinnings of *Ryan* were destroyed more than 20 years ago when Congress amended the Longshore and Harbor Workers' Compensation Act ("LWCHA"). *See* Act of Oct. 27, 1972, Pub.L. No. 92–576, § 18(a), 86 Stat. 1251, 1263, (codified as amended at 33 U.S.C. § 905 (1970)) (hereinafter "Act of Oct. 27, 1972"); *see also* H.R.Rep. No. 1441, 92nd Cong., 2nd Sess. 3, *reprinted in* 1972 U.S.C.C.A.N. 4698, 4702 (hereinafter "H.R.Rep. No. 1441"). A brief explication is necessary.

In *Ryan,* a longshoreman was injured when improperly stored cargo collapsed on him, and he recovered from the vessel owner under the strict liability doctrine of unseaworthiness as set out in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (holding that a ship's obligation of seaworthiness, traditionally owed to seamen, extended to a longshoreman who was injured while aboard the vessel and incurring a seaman's hazards). *See generally Drake v. Raymark Ind., Inc.,* 772 F.2d 1007, 1013–19 (1st Cir.1985). The vessel owner then sought indemnity from the stevedoring company that had negligently loaded the ship. Looking to the contractual relationship between the vessel owner and the stevedore, the Supreme Court, in a 5–4 decision, held that despite the fact that the contract merely provided for the performance of specified stevedoring operations, it contained two implied-in-fact terms: first, services would be performed in a safe and workmanlike manner, analogous to a manufacturer's implied warranty of fitness; and second, the stevedore would indemnify the vessel owner for any damages sustained by the vessel owner as a result of any breach of the stevedore's duty to perform the work safely. *Ryan,* 350 U.S. at 132–34, 76 S.Ct. at 236–38. Because the Court relied on contract analysis, the exclusive remedy clause of the LHWCA was circumvented. The stevedore's liability was said to be not "on account of the injury" but "on account of the contract" between vessel owner and stevedore. *Id.*

Ultimately, unseaworthiness actions for LHWCA covered workers proved to be a strained application of contract principles to avoid tort liability. The situation culminated in comprehensive reforms of the LHWCA in 1972, whereby Congress expressly abolished the *Ryan* doctrine. Act of Oct. 27, 1972, *supra.* In explaining the reason for the amendment, the House Report indicated that the proliferation of litigation involving abstruse reasoning and fine distinctions in cases generated by the *Ryan* doctrine occasioned substantial expenditures which "could be better utilized to pay improved compensation benefits [rather than defray litigation costs]." H.R.Rep. No. 1441, *supra.* The impact of repetitive and protracted litigation upon the courts was also considered. Congress determined that it would be "fairer to all concerned, and fully consistent with the objective of protecting the health and safety of employees who work aboard vessels, to predicate liability of vessel owners upon negligence principles rather than on the no-fault concept of unseaworthiness." *Id.* at 4703. Shipowners would be placed in the same position, insofar as third party liability was concerned, as land-based parties in non-maritime disputes. *Id.* Actions against the vessel would be based on negligence and would meet the objective of encouraging safety because the vessel owner would still be required to exercise the same level of care as a land-based party in providing a safe place to work, but the vessel would no longer be liable under the unseaworthiness doctrine for injuries which are the fault of the stevedore. The report concluded that the doctrine of the *Ryan* case, which implied indemnity between the vessel owner and the stevedoring company, would no longer be appropriate because the vessel's liability would no longer be absolute. Consequently, the implied-in-fact indemnity doctrine of *Ryan* has no vitality today and clearly has no application to this case, in any event.

The majority of jurisdictions, when interpreting comparable exclusive remedy provisions, similarly have reached the conclusion that indemnity should not be implied-in-fact against an employer insulated from suit by the applicable workers' compensation scheme. *See, e.g., Christie v. Ethyl Corp.,* 715 F.2d 203 (5th Cir.1983) (applying Mississippi law); *White v. Johns–Manville Corp.,* 662 F.2d 243 (4th Cir.1981) (applying Virginia law); *Missouri Pub. Serv. Co. v. Henningsen Steel Prods. Co., Inc.,* 612 F.2d 363 (8th Cir.1980) (applying Missouri law); *Bjerk v. Universal Eng'g Corp.,* 552 F.2d 1314 (8th Cir.1977) (applying Minnesota law); *Kudelka v. American Hoist & Derrick Co.,* 541 F.2d 651 (7th Cir.1976) (applying the Federal Employees Compensation Act); *General Elec. Co. v. Cuban Am. Nickel Co.,* 396 F.2d 89 (5th Cir.1968) (applying Louisiana law); *Centraal Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring Co.,* 380 F.2d 523 (5th Cir.1967) (the *Ryan* doctrine applies only in admiralty

and does not extend to cases under Alabama law); *Bell Helicopter Textron, Inc. v. U.S.,* 755 F.Supp. 269 (D.Alaska 1990); *Hammond v. Kolberg Mfg. Corp.,* 542 F.Supp. 662 (D.Colo.1982); *In re General Dynamics Asbestos Cases,* 539 F.Supp. 1106 (D.Conn.1982) (interpreting the LWHCA); *Coleman v. General Motors Corp.,* 386 F.Supp. 87 (N.D.Ga.1974); *O'Steen v. Lockheed Aircraft Corp.,* 294 F.Supp. 409 (N.D.Ga.1968); *Milai v. Tradewind Indus., Inc.,* 556 F.Supp. 36 (E.D.Mich.1982) (interpreting the FECA); *Burrell v. Rodgers,* 441 F.Supp. 275 (W.D.Okla.1977); *Lockhart v. Heede Intern., Inc.,* 445 F.Supp. 28 (E.D.Tenn.1977); *Alameda Tank Co., Inc. v. Starkist Foods, Inc.,* 103 Cal.App.3d 428, 162 Cal.Rptr. 924 (2 Dist.1980); *E.B. Wills Co., Inc. v. Superior Court of Merced Co.,* 56 Cal.App.3d 650, 128 Cal.Rptr. 541 (5 Dist.1976); *Holly Sugar Corp. v. Union Supply Co.,* 194 Colo. 316, 572 P.2d 148 (1977) (reviewing both Colorado and Montana law); *Hilzer v. MacDonald,* 169 Colo. 230, 454 P.2d 928, 931 (1969); *Sargent Ind., Inc. v. Delta Air Lines, Inc.,* 251 Ga. 91, 303 S.E.2d 108 (1983); *Bagwell v. South Louisiana Elec. Coop. Ass'n.,* 228 So.2d 555 (La.App. 3 Cir.1969); *American Radiator & Standard Sanitary Corp. v. Mark Eng'r Co.,* 230 Md. 584, 187 A.2d 864 (1963); *Diekevers v. Brekel, Inc.,* 73 Mich. App. 78, 250 N.W.2d 548 (1976); *Linsin v. Citizens Electric Co.,* 622 S.W.2d 277 (Mo. App.1981) (express contract is the only exception to exclusivity rule) (citing *Parks v. Union Carbide Corp.,* 602 S.W.2d 188 (Mo. 1980)); *Missouri Pac. R.R. v. General Mills, Inc.,* 743 S.W.2d 433 (Mo.App.1988); *Outboard Marine Corp. v. Schupach,* 93 Nev. 158, 561 P.2d 450 (1977); *Royal Indem. Co. v. Southern Cal. Petroleum Corp.,* 67 N.M. 137, 353 P.2d 358 (1960); *Camporese v. Port Auth. of N.Y. & N.J.,* 49 N.Y.2d 814, 426 N.Y.S.2d 977, 403 N.E.2d 961 (1980) (applying New Jersey law); *Sayler v. J.D. Holstrom,* 239 N.W.2d 276 (N.D.1976); *Contijo Walker v. Puerto Rico Water Resources Auth.,* 91 P.R.R. 557 (1964); *Varela v. American Petrofina Co.,* 658 S.W.2d 561 (Tex. 1983); *Freund v. Utah Power & Light Co.,* 793 P.2d 362 (Utah 1990); *Madsen, Inc. v. Babler Bros., Inc.,* 25 Wash.App. 880, 610 P.2d 958 (1980); *Montoya v. Greenway Aluminum Co.,* 10 Wash.App. 630, 519 P.2d 22 (1974). *See also* 2B Larson § 76.71; Joel E. Smith, Annotation, *Modern Status of Effect of State Workmen's Compensation Act on Right of Third–Person Tortfeasor to Contribution or Indemnity from Employer of Injured or Killed Workman,* 100 A.L.R.3d 350 (1980).

A few courts have allowed implied contractual indemnity to defeat the exclusive remedy provision in workers' compensation acts. *See, e.g., Heckart v. Viking Exploration, Inc.,* 673 F.2d 309 (10th Cir.1982) (applying Wyoming law); *Forward v. Cotton Petroleum Corp.,* 540 F.Supp. 122 (D.Colo.1982) (applying Wyoming law); *Croxen v. United States Chem. Corp. of Wis.,* 558 F.Supp. 6 (N.D.Iowa 1982); *Weggen v. Elwell–Parker Elec. Co.,* 510 F.Supp. 252 (S.D.Iowa 1981) (detailed specifications gave rise to independent obligation to indemnify); *Harn v. Standard Engineering Co.,* 416 F.Supp. 1168 (D.S.D.1976); *Farrall v. Armstrong Cork Co.,* 457 A.2d 763 (Del.Super.1983); *Hirasa v. Burtner,* 68 Haw. 22, 702 P.2d 772 (1985); *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980); *Blackford v. Sioux City Dressed Pork, Inc.,* 254 Iowa 845, 118 N.W.2d 559 (1962); *U.S. Fidelity & Guar. Co. v. Kaiser Gypsum Co., Inc.,* 273 Or. 162, 539 P.2d 1065 (1975); *Pan American Petroleum Corp. v. Maddux Well Serv.,* 586 P.2d 1220 (Wyo.1978). *Cf. Pontious v. Bliss,* 102 Mich.App. 718, 302 N.W.2d 293 (1981). Several of these cases rely on *Ryan,* and it is now known that such reliance is misplaced. In short, the reasoning of the minority view is totally unpersuasive.

This Court concludes that the Rhode Island Supreme Court, when faced with this issue, will adopt the definite rule that only a clear and unequivocal promise by a party immune from suit can create a duty to indemnify in this kind of a situation. The allure of such a black letter rule is that the parties to the contract can knowingly and voluntarily, for valuable consideration, make provision for indemnification on such express terms as they desire (subject to the limitations of § 6–34–1).

### III. Indemnity Implied–In–Law

Where one party has been compelled by reason of some legal obligation to pay damages incurred, without active fault on his part, but in reality due to the active negligence of another, a quasi-contractual relationship is said to arise between the parties from which a right to indemnity can be implied to prevent unjust enrichment. Indemnity implied-in-law is also called equitable indemnity or quasi-contractual indemnity. Indemnity implied-in-law should not be confused with indemnity implied-in-fact. Indemnity implied-in-fact is a creation of the parties' intent and is claimable without reference to the relative fault of the parties. 42 C.J.S. *Indemnity* § 31 (1991). Indemnity implied-in-law is a creation of law to avoid inequity or injustice. *See Restatement of Contracts (Second) § 4,* case comment (b) (1991). Although in some cases the line between the two may be unclear, *see id.,* the important distinction to draw is that indemnity-in-law rests upon equitable considerations compelled by a contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other, while indemnity-in-fact is based on an independent contractual relationship manifested by the intent of the parties. *Bear Creek Planning Committee v. Title Ins. & Trust Co.,* 164 Cal.App.3d 1227, 211 Cal.Rptr. 172, 178 (3 Dist.1985).

In *Helgerson v. Mammoth Mart, Inc., supra,* 335 A.2d at 341, the Rhode Island Supreme Court recognized that, absent a contractual agreement, indemnity can be grounded upon equitable considerations where the contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other requires that equity intervene to prevent injustice. Later in *Muldowney v. Weatherking Products, Inc., supra,* 509 A.2d at 443, the Court adopted a three part test for determining when an equitable right to indemnity exists: first, the party seeking indemnity must be liable to an injured party; second, the prospective indemnitor must also be liable to the injured party; third, as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indem-

nitor. *Id.* The Court indicated that the third prong would be satisfied when a potential indemnitor is at fault and the prospective indemnitee is blameless. *Id.* at 444. *See Wilson v. Krasnoff,* 560 A.2d 335, 341 (R.I. 1989).

Committed to preserving the integrity of the legislative design of the RIWCA, the Rhode Island Supreme Court did not allow indemnity implied-in-law to defeat the exclusive remedy provision contained therein. In *Fish v. Burns Bros. Donut Shop,* 617 A.2d 874 (R.I.1992), after falling through a trap door, an exterminator's employee received workers' compensation benefits and sued the owner of the donut shop where he fell. The donut shop owner impleaded the exterminator, seeking contribution and indemnification, but later declined to pursue the contribution issue. *Id.* at 874–75. The employer raised the exclusivity defense and moved for summary judgment, which the trial court granted. In affirming that ruling, the Rhode Island Supreme Court held that utilizing indemnity-in-law in that situation would violate the explicit language of § 28–29–20. *Id.* at 875. The *Fish* Court reiterated the *Muldowney* three part test for creation of an equitable right of indemnification and found that the second element was not met because the employer had already discharged its liability to its injured employee through the payment of workers' compensation benefits. *Id.* In so holding, the Court specifically explained,

> only under extraordinary circumstances would equitable indemnity apply in workers' compensation cases. In this case defendant has not set forth a special legal relationship between itself and the third party sufficient to bridge the gap in its equitable indemnity argument. Such a relationship is prerequisite to vault the high hurdle we set forth to limit the application of indemnity without a contractual basis.

*Id.* at 875–76. (citations omitted). Subsequent Rhode Island Supreme Court decisions have reaffirmed the decision in *Fish. See DiQuinzio v. Panciera Lease Co., Inc.,* 641 A.2d 50, 55 (R.I.1994); *Boucher v. McGovern,* 639 A.2d 1369, 1375 (R.I.1994).

Even assuming the prerequisite "special legal relationship" and/or "extraordinary cir-

cumstances," A & B fails to satisfy the second element of the *Muldowney* test. Because of the *Fish* reasoning, A & B's claim for implied equitable indemnity is patently untenable in this case.

### CONCLUSION

For the reasons stated in this Opinion, it is the conclusion of this Court that the motion for summary judgment filed by plaintiff A & B should be denied and the motion for summary judgment asserted by defendant Atlas should be granted. The Clerk will enter judgment for defendant Atlas forthwith. It is so ordered.