[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are the cross motions for summary judgment of the third party Plaintiff, Kiewit Construction Company ("Kiewit"), and third party defendant, ThermoCor Kimmins, Inc ("Kimmons").[1] Kiewit asks this Court to enforce a contract between the parties by requiring Kimmons to pay the costs of Kiewit's defense in the underlying negligence action. Kiewit also seeks attorney's fees pursuant to G.L. 1956 § 9-1-45. Kimmons opposes Kiewit's motion and asks this Court to dismiss the third party complaint. Jurisdiction is pursuant to Superior Court Rule of Civil Procedure 56 (c).
 FACTS AND TRAVEL
Plaintiff Gary Manning ("Manning") was injured in a fall during a demolition project and collected workers' compensation from his employer, Kimmins. Kimmins was hired by the general contractor, Kiewit, pursuant to a $1,300,000 Subcontract Agreement to perform demolition work on a contract job known as the Narragansett Electric Company South Street Dismantlement Project. The Plaintiff sued the owners of the property, Narragansett Electric Company and New England Power Company, and Kiewit on two counts of negligence. Subsequently, Kiewit filed a third party complaint against Kimmins and Reliable National Insurance Company seeking to enforce Section 11, entitled "INDEMNIFICATION," of the Subcontractor's Agreement. The third party action was severed prior to a full trial on the underlying claim in which the jury found that Kiewit was not negligent.
 STANDARD OF REVIEW
The proponent of a motion for summary judgment must demonstrate by documentary matter both that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.Palmisciano v. Burrillville Racing Ass'n., 603 A.2d 317, 320 (R.I. 1992). In reviewing such a motion, the court does not weigh the evidence or make credibility determinations, but considers the affidavits, the pleadings, and other documentary evidence in the light most favorable to the opposing party. Id. at 320. When both of the adversary parties file for summary judgment, the court "shall treat the relevant allegations of both parties in the most favorable light insofar as they oppose the respective motions." RIH Medical Found., Inc. v. Nolan, 723 A.2d 1123, 1125
(R.I. 1999). "The purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996). However, when both parties move for summary judgment and no genuine issue of material fact exists, the court must review the record to determine if either party is entitled to judgment as a matter of law. Dubis v. East GreenwichFire District, 754 A.2d 98, 100 (R.I. 2000).
 THE CONTRACT
In the instant case, the facts are not disputed. At issue is the application of a contract term to the relevant facts in light of the statutory scheme and the applicable rules of law. Keiwit declares that Kimmins has breached Section 11 of the Subcontractors Agreement by failing to defend Kiewit in the underlying action. Kiewit contends that Section 11 clearly and unambiguously requires Kimmins to defend Kiewit in the suit by Manning, and that enforcement of the indemnification clause is not statutorily barred in Rhode Island. Countering, Kimmins does not suggest that the clause is ambiguous. Instead, Kimmins contends that the clause does not apply to the undisputed facts since Kiewit was not held liable to Manning. Kimmins maintains that indemnification only applies when the party seeking indemnity is liable to a third party. Additionally, Kimmins asserts that recovery of attorneys' fees, which constitute the bulk of Kiewit's costs to defend the tort action, would violate the fundamental purpose of G.L. 1956 § 6-34-1 — to prevent general contractors from contracting away claims based upon their own negligence. For the reasons stated herein, this Court finds that the contract is clear and unambiguous and that Section 11 applies to the facts of this case. Additionally, § 6-34-1 does not bar Kiewit's recovery.
 SECTION 11 APPLIES
It is a well-settled rule of contract interpretation that to determine "whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." W.P. Associates v. Forcier, 637 A.2d 353, 356 (R.I. 1994) (citing Antone v. Vickers, 610 A.2d 120, 123 (R.I. 1992)). Only when an agreement is "reasonably and clearly susceptible" to more than one interpretation, is it deemed to be ambiguous. Id. It is also well established that "parties are bound by the plain terms of their contract." Capital Properties, Inc. v. State of Rhode Island,749 A.2d 1069, 1081 (R.I. 1999) (quoting Vincent Co. v. First Nat'lSupermarkets, Inc., 683 A.2d 361, 363 (R.I. 1986)). Courts interpret contract terms to determine the intent of the parties. Id. When the intentions of the parties can be clearly inferred from the terms of the contract, the court will enforce those intentions as long as they "can be fairly carried out consistent with settled rules of law." Id. (quotingHill v. M.S. Alper Son, Inc., 106 R.I. 38, 47, 256 A.2d 10, 15
(1969)). Furthermore, "Rhode Island courts enforce express contractual indemnification provisions against employers." A B Constr., Inc. v.Atlas Roofing and Skylight Co., 867 F. Supp. 100, 106 (D.R.I. 1994).
At issue in the instant case is Section 11 of the Subcontractor Agreement, which states in pertinent part:
 "INDEMNIFICATION. The Subcontractor further specifically obligates itself to the Contractor, Owner and any other party required to be indemnified under the Prime Contract, jointly and separately, in the following respects, to-wit: . . . (b) to defend and indemnify them against and save them harmless from any and all claims, suits or liability for damages to property including loss of use thereof, injuries to persons, including death, and from any other claims, suits or liability on account of acts or omissions of Subcontractor, or any of its subcontractors, suppliers, officers, agents, employees or servants, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided however, Subcontractor's duty hereunder shall not arise if such claims, suits or liability, injuries or death or other claims or suits are caused by the negligence of a party indemnified hereunder unless otherwise provided in the Prime Contract. Subcontractor's obligation hereunder shall not be limited by the provisions of any Workers' Compensation act or similar statute."
The indemnification clause, when considered as part of a $1,300,000 contract for demolition work, negotiated at arms length, in which the specific requirements for the subcontractor's liability insurance obligations and safety protocol were addressed with particular detail, and given the ordinary meaning of the words used, expresses the clear intention of the parties. The subcontractor, Kimmons, was to both defend and indemnify the general contractor, Keiwit, for any sums expended as compensation for injuries to third parties, as a result of any claims arising due to the acts or omissions of Kimmons or its agents, unless the injuries resulted from the negligence of the indemnitees.[2] In fact, Kimmons does not argue that the clause is ambiguous, but instead asserts, in effect, that it does not apply because the "plain terms of the contract can[not] be carried out consistent with settled rules of law." Capital Properties, Inc., 749 A.2d at 1081.
Kimmons' main contention is that the indemnification clause simply does not apply because Kiewit has not expended any funds to Manning. Kimmons suggests that indemnification only applies if the indemnitee is found liable in the underlying action. While Kimmons correctly explains the equitable nature of implied indemnification,[3] it fails to consider the express contract in the instant matter.[4] This line of reasoning completely ignores the fact that Section 11, by its plain language, specifically obligated Kimmons not only to indemnify, but also to defend Kiewit for any claims arising due to the acts or omissions of Kimmons or its agents.
The duty to defend most often arises in the context of insurance policies which are also contracts "with terms that must be construed in accordance with their plain and ordinary meaning." Elgar v. Nat'lContinental/Progressive Ins. Co., 849 A.2d 324, 328 (R.I. 2004). When a policy contains a provision requiring the insurer to defend the insured, courts apply what is known as the pleadings test to determine if the insurer must defend the insured. Progressive Casualty Ins. Co. v.Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001). The pleadings test "requires the trial court to look at the allegations contained in the complaint, and if the pleadings recite facts bringing the injury complained of within the coverage of the policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." Id.
In Progressive, for example, an automobile insurer was obliged to defend an insured where the suit alleged damages because of bodily injury and property damage, even though the insured would ultimately not be liable to the plaintiff. Id.
Applying the pleadings test to the case at bar results in a determination that the personal injury damages alleged by Manning are those for which Kimmons expressly obligated itself to defend Kiewit, to wit, "injuries to persons." However, Kimmons contends that the modifying language "on account of acts or omissions of Subcontractor, or any of its . . . employees" requires a finding that Kimmons was negligent before Kimmons can be required to defend Kiewit. A fair reading of the contract term, however, shows that the parties could not have intended that the "acts and omissions" giving rise to suits or claims necessarily be negligent acts and omissions. In fact, an act may accurately be defined as an accident in certain circumstances. Allen v. State, 420 A.2d 70, 72
(R.I. 1980). In general, an act or omission is not deemed negligent until competent evidence establishes a causal relationship between the act and an injury. Costantino v. Suburban Fitness Ctr., 792 A.2d 741, 741-42
(R.I. 2001) (acts and omissions of volunteer fire department's emergency rescue personnel not grossly negligent). Clearly, an act or omission may give rise to a claim or suit even if the actor is not ultimately deemed to have been negligent. Furthermore, the contract expressly excludes from its terms those instances in which the indemnitee is deemed to be negligent. Had negligence on its part been a prerequisite to the obligation of the subcontractor under Section 11, the language of the term could have been explicit. Since Manning was an employee of Kimmons when he fell and was injured, and the resulting injury gave rise to the underlying suit, the injury, and the accompanying suit can fairly be said to be on account of an act of Kimmons' employee.
 ENFORCEMENT IS NOT STATUTORILY BARRED
Finally, the parties disagree as to whether or not enforcement of Section 11 is statutorily barred. Keiwit maintains that § 6-34-1 does not apply because Kiewit was exonerated in the underlying suit. Kimmons counters that the statute applies because the underlying suit was based on the alleged negligence of Kiewit. For the reasons stated herein, this Court agrees with Kiewit.
Section 6-34-1 of the Rhode Island General Laws deals specifically with construction indemnity agreements and bars any such agreement purporting to indemnify a contractor for his own negligence:
 "Construction indemnity agreements. —
 (a) A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected with a building, structure, highway, road, appurtenance, or appliance, pursuant to which contract or agreement the promisee or the promisee's independent contractors, agents, or employees has hired the promisor to perform work, purporting to indemnify the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence of the promisee, the promisee's independent contractors, agents, employees, or indemnitees, is against public policy and is void; provided that this section shall not affect the validity of any insurance contract, worker's compensation agreement, or an agreement issued by an insurer.
 (b) Nothing in this section shall prohibit any person from purchasing insurance for his or her own protection or from purchasing a construction bond."
"The clear and direct mandate of § 6-34-1 bars the enforcement" of agreements in which a subcontractor agrees to indemnify a general contractor for the latter's own negligence. Cosentino v. A.F. LusiConstr. Co., Inc., v. Otis Elevator Co., 485 A.2d 105, 107 (R.I. 1984) (underlying suit of subcontractor's employee against general contractor alleging negligence). The statute "does not prohibit the use of all indemnification contracts in the construction industry." Id. In fact, the statute has been interpreted to allow agreements in which the "subcontractor indemnifies the general contractor for claims arising from the subcontractor's own negligence." A.F. Lusi Constr., Inc. v. PeerlessIns. Co., 847 A.2d 254, 265 (R.I. 2004) (citing Cosentino,485 A.2d at 107). In applying the statute to unambiguous contract terms purporting to indemnify general contractors, courts have also held that when a "contract calls for a subcontractor to indemnify the general contractor for its own negligence and for that of the general contractor, the former obligation is enforceable, while the latter obligation is unenforceable." Cosimini v. Atkinson-Kiewit Joint Venturev. Rusco Steel Co., 877 F. Supp. 68, 71 (D.R.I. 1995). For example, in Cosentino the court held that, in accordance with the terms of the agreement, the subcontractor was responsible to indemnify the general contractor to the extent of the subcontractor's own negligence.485 A.2d at 107.
The agreement in question here clearly satisfies the direct mandate of § 6-34-1 because the general contractor is barred from any recovery if its own active negligence causes the claim or injury.[5] Furthermore, since Kiewit was exonerated of negligence in the underlying action, applying the facts of this case also does not run counter to the letter of the law. Kimmons' contention that the mere allegation of Kiewit's negligence in the underlying suit brings the claim within the auspices of the statute is without merit. Both the contract and the statute clearly and unambiguously state that the bar to indemnification arises when the claim or injury is "caused by" the general contractor's own negligence. Kiewit's lack of actual negligence, therefore, is dispositive. Additionally, as the cases demonstrate, application of an indemnification clause will often arise in claims alleging negligence on behalf of the general contractor. See e.g., Cosimini, 877 F. Supp. 68 (underlying suit of subcontractor's employee against general contractor alleging negligence); A.F. Lusi Constr., Inc., 847 A.2d 254 (underlying suit of subcontractor's employee against general contractor alleging negligence); Cosentino, 485 A.2d 105 (underlying suit of subcontractor's employee against general contractor alleging negligence). Whether or not, and to what extent, § 6-34-1 is a bar to recovery rests on the ultimate determination of negligence. See e.g., Cosimini, 877 F.Supp. 68
(contract modified to require subcontractor to indemnify contractor for damages attributable to subcontractor's negligence); Cosentino,485 A.2d 105 (remanded for a determination on apportionment of negligence between contractor and subcontractor).
 CONCLUSION
Since the jury in the underlying tort action found that Kiewit was not negligent, Section 11 of the Subcontractor's Agreement is enforceable. Kimmons is hereby ordered to pay the reasonable expenses, which necessarily include the reasonable attorney's fees, incurred by Kiewit in defense of Manning's negligence action. However, Kiewit's additional request for an award of the attorney's fees incurred in the pursuit of this breach of contract claim is denied pursuant to G.L. 1956 §9-1-45;[6] Kimmons' defense herein presented viable questions of law. Counsel shall submit the appropriate judgment for entry.
[1] Kiewit moved to "Compel Indemnification" by Kimmons. Kimmons opposed Kiewit's motion and moved for judgment as a matter of law dismissing the complaint. Since the essence of each of the parties' motions is to resolve the third party complaint as a matter of law, this Court will treat them as motions for summary judgment pursuant to Rule 56 (a) and (b).
[2] Riverside Webster's II Dictionary defines "defend" relative to the law in two ways: "a. To represent (a defendant) in a criminal or civil case" and, "b. To contest (an action or claim)." Riverside Webster's IIDictionary 183 (rev. ed. 1996). Indemnify is defined: "To protect against loss or damage: insure"; and "To make compensation to for loss or damage." Id. at 352.
[3] See Muldowney v. Weatherking Products, Inc., 509 A.2d 441, 443
(R.I. 1986) (adopting a test to determine when equitable right to indemnity exists — indemnitee must be liable to a third party).
[4] "Clearly, a right to indemnification can be created by contract. Independent of other duties and obligations, the indemnitor can expressly agree to save and hold the indemnitee harmless against any loss, damage, and/or liability." A B Construction, Inc., 867 F. Supp. at 106
(holding that there was no express promise to indemnify in the contract at issue).
[5] The clause in Section 11 allowing for recovery by the contractor "whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder" would be read to allow for indemnification for that portion of damages attributable to the subcontractor, subtracting any amount attributable to the general contractor. See Cosmini, 877 F. Supp at 71 (1995).
[6] Section 9-1-45 reads as follows:
 "Attorney's fees in breach of contract actions. —
 The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from breach of a contract in which the court: (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or (2) Renders a default judgment against the losing party."
See also UXB Sand Gravel, Inc. v. Rosenfeld Concrete Corp., 641 A.2d 75,80 (R.I. 1994) (losing party "presented a justiciable issue even though the evidence eventually proved to be legally deficient").