[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion for preliminary injunction of Chelo's of Woonsocket, Inc., Beef Hearth, Inc., Beef Hearth of Providence, Inc., Chelo's of Warwick, Inc., Chelo's Beef Hearth of Cranston, Inc., Chelo's Realty, Inc., Chelo's Waterfront Bar 
Grill, Inc., Chelo's Real Estate, Chelo's of East Providence, Inc., Chelo's Properties, L.L.C., Chelo's of South County, Inc., Chelo's Steak House, Inc. (collectively, the Chelo's Companies), Glenn Chelo, and Craig Chelo (collectively, Plaintiffs). Also before this Court are the counterclaims of Jay H. Chelo and Mozzarella's of North Providence, Inc. (Defendants) for injunctive relief and declaratory judgment. Jurisdiction is pursuant to Super. R. Civ. P. 65 and R.I. Gen. Laws § 9-30-1 etseq.
 FACTS/TRAVEL
The Chelo's Companies own and operate various restaurants throughout Rhode Island. Glenn Chelo (G. Chelo) and Craig Chelo (C. Chelo) are officers, shareholders, and/or directors of various Chelo's Companies. Until December of 2001, Jay Chelo (J. Chelo) also possessed an ownership interest in some of the Chelo's Companies. Around this time, however, a business dispute arose between Plaintiffs and J. Chelo, and as part of a negotiated resolution to this disagreement, J. Chelo sold his ownership interest to G. Chelo and C. Chelo. A document dated December 6, 2001 and entitled "Settlement Agreement" (the Agreement) memorializes this sale. The Agreement contains a provision designated "Non-Compete," which states, in pertinent part,
 "The Sellers agree that for a period of five (5) years following the date hereof, they shall not directly or indirectly, within a fifty (50) mile radius of Providence, Rhode Island (but not including any portion of the State of Connecticut), form, acquire or become associated in any capacity with any enterprise which engages in the full service, American-style, casual theme restaurant business of the Companies.[1] In the event of a breach by either of the Sellers of this undertaking, the Chelo's entities shall be entitled to obtain injunctive relief."
Subsequent to the Agreement's execution, J. Chelo opened a restaurant called "Mozzarella's" in Dayville, Connecticut.[2] Furthermore, around May of 2003, J. Chelo incorporated a second Mozzarella's restaurant of which he is president and a shareholder. This second restaurant is located at 1410 Mineral Spring Avenue in North Providence, Rhode Island, three miles away from Chelo's Beef Hearth of Providence and five to six miles away from the Chelo's restaurant at the Apple Valley Mall.
Mozzarella's in North Providence offers an extensive dinner menu, including appetizers such as bruschetta, calamari, grilled pizza, "Fried Mozzarella Marinara," and "Fresh `Buffalo' Mozzarella." The menu also features salads topped with Gorgonzola and Mozzarella cheese; twelve pizzas; twelve pasta dishes including "Pasta Primavera," "Baked Ziti," and "Spaghetti and Meatballs `Homemade'"; entrees such as "Chicken and Broccoli Alfredo," "Veal Marsala," "Chicken Parmesan Dinner," "Veal Parmesan Dinner," and "Eggplant Parmesan Dinner"; chicken, veal, and seafood entrees served over fresh linguine; desserts such as tiramisu; and cappuccino and espresso. On its lunch menu, Mozzarella's in North Providence offers, among other items, ten different "`Italian' Panini Sandwiches" and four pasta dishes. The cover of the restaurant's menu displays a gondolier wearing a horizontally striped shirt and propelling his gondola down a waterway in front of a block of closely-spaced, four-story apartment buildings with balconies.
In September of 2003, Plaintiffs filed a Verified Complaint in which they allege that the opening of Mozzarella's in North Providence would constitute a breach of the Agreement's non-compete provision. Plaintiffs seek a preliminary injunction requiring J. Chelo to discontinue operating what Plaintiffs consider to be a "full-service, American-style, casual theme restaurant." More specifically, Plaintiffs petition this Court to require Defendants to remove numerous items from the Mozzarella's menu or significantly change the restaurant's focus. Plaintiffs'Memorandum in Further Support of Their Motion at 3, 9. The Verified Complaint also includes a count for breach of settlement agreement.[3]
After Mozzarellas opened for business around October of 2003, Plaintiffs filed an Amended Complaint, adding a declaratory judgment claim. Defendants, in turn, filed counterclaims for declaratory judgment, injunctive relief, breach of contract, tortious interference with contract, tortious interference with prospective business advantage, abuse of process, indemnification, and contribution.[4]
 PRELIMINARY INJUNCTION
The criteria a hearing justice should consider in deciding whether to grant a preliminary injunction, though variously stated in the case law, are well-settled. See, e.g., In reState Employees' Unions, 587 A.2d 919 (R.I. 1991). The party seeking a preliminary injunction must demonstrate that "it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." Fund for Cmty.Progress v. United Way of Southeastern New England,695 A.2d 517, 521 (R.I. 1997). The moving party must additionally show that it possesses a reasonable likelihood of succeeding on the merits of its claim at trial. See In re State Employees'Unions, 587 A.2d at 925; Pawtucket Teachers Alliance Local No.920 v. Brady, 556 A.2d 556, 557 (R.I. 1989); Coolbeth v.Berberian, 112 R.I. 558, 566, 313 A.2d 656, 660 (R.I. 1974). To make this showing, the moving party need not demonstrate a certainty of success; rather, it only needs to make out a prima facie case. Coolbeth, 112 R.I. at 564-66, 313 A.2d at 660. "Having found a likelihood of success and an immediate irreparable injury, the trial justice should next consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted, and the public interest in denying or granting the requested relief." Fund for CommunityProgress, 695 A.2d at 521. In considering the equities, the hearing justice should keep in mind that
 "the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered." Coolbeth, 112 R.I. at 564, 313 A.2d at 659.
 Plaintiffs' Motion
I. Irreparable Harm
Plaintiffs move this Court to grant a preliminary injunction, arguing that the law does not require them to prove irreparable harm and that the Agreement entitles them to injunctive relief. Specifically, Plaintiffs rely on an Agreement provision stating that "[i]n the event of a breach by either of the Sellers of this undertaking, the Chelo's entities shall be entitled to obtain injunctive relief." Defendants, however, assert that Plaintiffs are not entitled to said relief because Plaintiffs have not proven irreparable harm.
This Court finds that Plaintiffs have failed to demonstrate irreparable harm and, therefore, are not entitled to a preliminary injunction. The law in Rhode Island is well-settled that in order to obtain a preliminary injunction, a party must prove irreparable harm. Fund for Cmty. Progress, supra. For instance, a restaurant owner seeking to enforce a lease provision prohibiting the sale of take-out food on the property adjoining his restaurant had to show irreparable harm. Iggy's Doughboys,Inc. v. Giroux, 729 A.2d 701, 705-706 (R.I. 1999). Here, however, Plaintiffs have failed to make any such showing. Furthermore, to the extent that the Agreement's provision granting Defendants injunctive relief in the event of a breach is enforceable, this Court finds that, at this time, insufficient evidence exists from which this Court could conclude that Defendants breached the Agreement.
II. Likelihood of Success on the Merits
Even if this Court were satisfied that Plaintiffs had demonstrated irreparable harm, it would still deny Plaintiffs' claim for injunctive relief as Plaintiffs also fail to show a reasonable likelihood of success on the merits. The first issue in determining if Plaintiffs can prove a likelihood of success on the merits is whether or not the non-competition provision is valid. In determining the validity of non-competition agreements, whether they are related to the sale of a business and the good will thereof or to employment contracts, courts apply a test of reasonableness. Mento v. Lanni, 106 R.I. 683, 687,262 A.2d 839, 841 (1970) (citing Oakdale Mfg. Co. v. Garst, 18 R.I. 484,489, 28 A. 973, 974 (1894)); Garelick, Inc. v. Leonardo,105 R.I. 142, 147, 250 A.2d 354, 356 (1969). Courts have applied the reasonableness test as articulated in § 515 of the Restatement of Contracts. See Dial Media, Inc. v. Schiff, 612 F. Supp. 1483,1490 (D.R.I. 1985); Wells v. Wells, 9 Mass. App. Ct. 321, 323,400 N.E.2d 1317, 1319 (1980); Garelick, Inc., 105 R.I. at 148,250 A.2d at 357. Section 515 has been rewritten in § 188(1)(a) and (b) of the Second Restatement of Contracts, which states:
 "[a] promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public." Restatement (Second) Contracts § 188(1)(a) and (b).
Both § 515 of the Original Restatement of Contracts and § 188 of the Restatement (Second) of Contracts "presuppose a legal interest worthy of protection on the part of the promisee." DialMedia, Inc., 612 F. Supp. at 1490. Therefore, "[i]f no legitimate interest exists, a restraint is unreasonably in restraint of trade." Id.
Courts should apply the reasonableness test "according to the circumstances of the contract" and should judge each case on its own facts. Mento, 106 R.I. at 687, 262 A.2d at 841-42. Therefore, contracts in restraint of trade are not necessarily void because of universality of time or space; rather, "they depend upon the reasonableness of the restrictions under the conditions of each case." Id. at 687, 262 A.2d at 841. Furthermore, "[t]he contract is to be determined by its subject-matter and the conditions under which it was made; by considerations of extensiveness or localism, of protection to interests sold and paid for, of mere deprivation of public rights for private gain, of proper advantage on one side, or useless oppression on the other." Id.
Moreover, in deciding the validity of non-competition agreements, courts distinguish between agreements ancillary to the sale of a business or an interest in a business and those attached to a contract of employment. See, e.g., Alexander Alexander, Inc. v. Danahy, 21 Mass. App. Ct. 488, 496,488 N.E.2d 22, 28 (1986). Courts make this distinction in response to "considerations which dictate that noncompetition covenants arising out of the sale of a business be enforced more liberally than such covenants arising out of an employer-employee relationship." Id.; Wells, 9 Mass. App. Ct. at 324,400 N.E.2d at 1319-20; Restatement (Second) Contracts § 188 at cmt. B. Such considerations include that in context of a sale of a business "there is more likely to be equal bargaining power between the parties; the proceeds of the sale generally enable the seller to support himself temporarily without the immediate practical need to enter into competition with his former business; and a seller is usually paid a premium for agreeing not to compete with the buyer. Alexander Alexander, Inc.,21 Mass. App. Ct. at 496, 488 N.E.2d at 28. Courts further take into account that "a seller of a business interest may not derogate from the value of the business as sold by competing with it" and that "the buyer is entitled to the full value of the `benefit and advantages' of his purchase." Wells, 9 Mass. App. Ct. at 324,400 N.E.2d at 1320.
In practice, "[t]he essential line of distinction seems to be that the purchaser is entitled to protect himself against competition on the part of the vendor, while the employer is not entitled to protection against mere competition on the part of the servant." Annotation, Enforceability of covenant againstcompetition, ancillary to sale or other transfer of business,practice, or property, as affected by duration of restriction,
45 A.L.R.2d 96 (1956). Therefore, restraints in the context of a contract of employment "must be scrutinized carefully to see that they go no further than necessary to protect an employer's legitimate interests, such as trade secrets or confidential consumer information." Alexander Alexander, Inc.,21 Mass. App. Ct. at 496, 488 N.E.2d at 28. Nevertheless, while courts look less critically at non-competition agreements ancillary to the sale of a business, "any covenant restricting competition is to be enforced only to the extent that it is reasonable in time and space, necessary to protect legitimate interests, and not an obstruction of the public interest." Id. at 498,488 N.E.2d at 29. In the context of the sale of a business, courts have found that good will constitutes a legitimate interest. See, e.g.,Wells, 9 Mass. App. Ct. at 327, 400 N.E.2d at 1321.
Plaintiffs argue that a legitimate interest exists where "the party seeking the legal protection engages in the same type of business as the restricted party, so there is some reason to give the contractually agreed — to protection." Plaintiffs' Memorandumin Further Support of Their Motion at 4. Accordingly, Plaintiffs assert that they possess a legitimate interest because "Mozzarellas is in the same type of business that Chelo's is in."Id. at 3-4. Defendants, however, claim that Plaintiffs seek to protect menu items, price structure, and the restaurant's look and feel, each of which, they assert, constitute non-protectable interests.
This Court finds that even given the more liberal enforcement of non-competition agreements related to the sale of a business, Plaintiffs have failed to demonstrate the existence of a legitimate interest. The Agreement does not explicitly include the transfer of good will, nor do Plaintiffs now argue that they seek to protect their business' good will. Furthermore, even if, as Defendants contend, Plaintiffs seek to protect menu items, price structure, and the restaurant's look and feel, Rhode Island law has not recognized such items as legitimate interests. Unlike a trade secret or confidential consumer information, menu items, price structure, and the restaurant's look and feel consist of items easily visible and discoverable to the public and are thus non-protectable.
Were this Court to find that Plaintiffs possessed a legitimate interest, Plaintiffs would still need to show a reasonable likelihood of success on the merits as to Defendants' alleged breach of the non-compete provision. In support of the claimed breach, Plaintiffs argue that Mozzarella's of North Providence consists of a general fare restaurant, that its menu contains a number of American-Italian dishes commonly found on Rhode Island restaurant menus, that its menu also contains dishes found on many American-style restaurant menus, and that its food is offered at an attractive price in a setting that is casual and comfortable for families. Defendants, however, contend that Mozzarellas is an Italian, and not an American-style, restaurant.
Predicated on the evidence before it, this Court finds that Mozzarella's of North Providence, as presently being operated, is not in breach of the Agreement's non-compete provision. By its plain language, the Agreement prohibits Defendants from opening an American-style, casual theme restaurant. See Durapin, Inc.v. American Prods., 559 A.2d 1051, 1056 (R.I. 1989) (stating that "it is a fundamental principle of contract law, as well as being well settled in this state, that clear and unambiguous language set out in a contract is controlling and will govern the legal consequences of its provisions"). This Court finds, however, that Mozzarella's, as presently functioning, does not constitute an "American-style restaurant." In reaching this determination, the Court considers the following: the name of the restaurant is synonymous with a well-known Italian cheese; the cover of Mozzarella's menu features a drawing of what the lay person would recognize as Venice, Italy; the menu features Italian appetizers such as bruschetta, calamari, and pizza; the menu offers salads topped with Italian cheeses such as Gorgonzola[5] and Mozzarella; the dinner menu alone includes twelve different Italian-type pasta dishes; entrees including chicken, veal, and seafood are served over fresh linguine; the menu contains words of Italian origin including "marinara,"[6] "Alfredo," "Parmesan,"[7] and "Marsala";[8] the menu features Italian bread-based items such as panini sandwiches and pizza; and the menu includes tiramisu, a well-known Italian dessert, as well as cappuccino and espresso, well-known Italian drinks. Finding that Plaintiffs cannot show a reasonable likelihood of success on the merits that either Mozzarella's of North Providence consists of a full service, American-style, casual theme restaurant, or that Plaintiffs possess a legitimate interest, this Court denies Plaintiffs' claim for injunctive relief.
III. Balance of the Equities
Having determined that Plaintiffs fail to meet the requirements of irreparable harm and reasonable likelihood of success on the merits, this Court need not reach the balancing of the equities. relief.
 Defendants' Motion
Defendants ask this Court to enjoin Defendants from "interfering with, harassing, annoying, molesting, contacting, disparaging, and/or otherwise acting in a subversive manner adverse to the interests of `Mozzarellas' Italian restaurant" and from "interfering with, annoying, molesting, contacting, disparaging and/or otherwise adversely affecting J. Chelo and/or Mozzarellas' ability to own and/or operate `Mozzarellas' Italian restaurant." Defendants' Memorandum in Support of TheirCounterclaim at 17-18. Defendants, however, have made no showing of irreparable harm or a reasonable likelihood of success on the merits. Accordingly, this Court denies Defendants' claim for injunctive relief.
 DECLARATORY RELIEF
Defendants seek declarations that "J. Chelo's organization of, formation of, acquisition of and/or association with Mozzarella[`]s is neither contrary to nor in violation of the terms and conditions of Paragraph 3 of the Agreement" and that "`Mozzarellas' Italian restaurant is not a `full service, American-styled, causal [sic] theme restaurant business of the [Chelo's] Companies' as that term is defined in Paragraph 3 of the Agreement." Defendants' Memorandum in Support of TheirCounterclaim at 17. Under the Uniform Declaratory Judgment Act, this Court possesses "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.I. Gen. Laws § 9-30-1. This Court may also grant further affirmative relief based on a declaratory judgment "whenever necessary or proper" provided subsequent "supplementary proceedings" are brought pursuant thereto. R.I. Gen. Laws §§9-30-8 and 9-30-12. However, the decision to grant or to deny declaratory relief under the Uniform Declaratory Judgment Act is purely discretionary. Sullivan v. Chaffee, 703 A.2d 748, 751
(R.I. 1997). Pursuant to its statutory powers, this Court grants Defendants' claim for declaratory judgment and declares the following as to Mozzarella's of North Providence as it is currently operating: J. Chelo's organization of, formation of, acquisition of and/or association with Mozzarella's is neither contrary to nor in violation of the terms and conditions of Paragraph 3 of the Agreement and Mozzarella's is not a full service, American-styled, casual theme restaurant business of the Chelo's Companies as that term is defined in Paragraph 3 of the Agreement.
 CONCLUSION
Finding that Plaintiffs fail to demonstrate irreparable harm or a reasonable likelihood of success on the merits, this Court denies Plaintiffs' motion for a preliminary injunction. This Court further denies Defendants' claim for injunctive relief as Defendants have likewise failed to prove irreparable harm and a reasonable likelihood of success on the merits. This Court grants, however, Defendants' claim for declaratory relief. Defendants' counsel shall submit an appropriate order for entry.
[1] "Companies," as the Agreement defines the term, consists of Chelo's of Woonsocket, Inc., Beef Hearth, Inc., Beef Hearth of Providence, Inc., Chelo's of Warwick, Inc., Chelo's Beef Hearth of Cranston, Inc., Chelo's Realty, Inc., Chelo's Waterfront Bar 
Grill, Inc., Chelo's Real Estate, Chelo's of East Providence, Inc., Chelo's Properties, L.L.C., Chelo's of South County, Inc., Chelo's Steak House, Inc., and Hysen Technologies, Inc.
[2] J. Chelo's operation or ownership of Mozzarella's in Dayville, Connecticut is not here at issue.
[3] As Plaintiffs have addressed neither their breach of settlement agreement nor their declaratory relief claims in their memoranda, this Court will not consider said claims at this time.
[4] At this juncture, this Court will consider only Defendants' claims for declaratory judgment and injunctive relief. SeeDefendants' Memorandum in Support of Their Counterclaim at 2, n. 1 (stating that "Defendants . . . reserve on their claims for breach of contract, tortious interference with contract, tortious interference with prospective business advantage, abuse of process, indemnification and contribution").
[5] See The American Heritage Dictionary of the EnglishLanguage, at 758 (4th ed. 2000) (defining "Gorgonzola" as "[a] pungent, blue-veined, pressed Italian cheese made of cow's milk. [After Gorgonzola, a town of northern Italy]").
[6] See id. at 1070 (describing the origin of the word "Marinara" as "Italian (alla) Marinara, in sailor style").
[7] See id. at 1279 (describing the origin of the word "Parmesan" as "from Old Italian parmigiano").
[8] See id. at 1073 (defining "Marsala" as (1) "[a] city of western Sicily . . . noted for its wine" and (2) "[a] sweet or dry fortified wine of Sicilian origin").